[No. 43236.    En Banc.    May 8, 1975.]

ROLAND L. MASON, *as Administrator, Appellant,* v. ROGER
LEE BITTON, *as Administrator, Defendant,* THE STATE OF
WASHINGTON *et al, Respondents.*

*Davis, Wright, Todd, Riese & Jones,* by *Lauren D. Stude-*

baker, *Richard S. Wirtz*, and *Charles A. Goldmark*, for appellant.

*Slade Gorton, Attorney General*, and *Joseph S. Montecucco, Assistant*, for respondent State.

*John P. Harris, Corporation Counsel*, and *Thomas J. Wetzel* and *Philip M. King, Assistants*, for respondent City of Seattle.

HUNTER, J.—The plaintiff (appellant), Roland L. Mason, representing the estate of Randall K. Mason, appeals from a summary judgment entered by the Superior Court for King County, in favor of defendants (respondents), State of Washington and the City of Seattle.

On December 3, 1971, at 2 a.m., Lieutenant Frank Perry of the Washington State Patrol, observed a Corvette traveling north on Interstate 5, at approximately 65 miles per hour. It was subsequently ascertained that the vehicle was being driven by Richard Bitton. Officer Perry allowed the car to pass and then attempted to stop him. Bitton did stop momentarily and then sped off down Interstate 5. Officer Perry pursued, radioing the Washington State Patrol dispatcher and informing him of the situation. Bitton took the Olive Way exit to elude Officer Perry and then reentered the freeway. The Washington State Patrol dispatcher transmitted Officer Perry's message to other Washington State Patrol vehicles in the area and the same message was forwarded to the Seattle Police Department. At this time, in response to the message, several other police vehicles, manned by officers of both the Washington State Patrol and the Seattle Police Department, joined in the chase, while other officers positioned themselves ahead of Bitton and waited for his arrival. There was no centralized effort to organize the pursuit; rather, each officer acted independently of the others.

By this time, Bitton had passed the 45th Street exit to the University district and had been clocked at approximately 140 miles per hour. Several officers had reached the conclu-

sion that the continuation of the pursuit was futile and posed a danger to others on the road. However, this belief was never forwarded to the dispatcher or the other officers involved in the pursuit.

Moments later, one officer of the Seattle Police Department attempted to form a moving roadblock by slowing traffic ahead of Bitton, who, upon seeing the traffic jam, passed by the barrier on the emergency parking strip and thereupon accelerated past the officer. By now at least seven officers of the Washington State Patrol and the Seattle Police Department had joined in the pursuit. Between North 160th and 165th, Bitton lost control, crossed the median, and collided with Mason's car in the southbound lane. The occupants of both cars were killed instantly.

On May 22, 1972, an action was brought by Mason's estate against Bitton's estate, the State of Washington, and the City of Seattle. As it relates to the defendants herein, the plaintiff alleged that both the State and the City of Seattle, through their agents, had been negligent in the manner in which the pursuit was carried out, and that this negligence was a proximate cause of Mason's death. On December 21, 1973, the State and the City of Seattle joined in a motion for summary judgment in the Superior Court for King County. After considering all the evidence presented by the parties, the motion was granted. The trial court held as a matter of law that (1) the defendants owed no duty to Mason which was not fulfilled; (2) the conduct of the defendants was not the proximate cause of Mason's death, which, in fact, resulted solely from a collision with an unlawfully operated vehicle; and (3) the pursuit of those who violate the law is a discretionary act on the part of the officers and is therefore neither tortious nor actionable. The plaintiff appealed directly to this court for review of this decision.

Washington, like many other jurisdictions, has passed specific legislation covering the duty owed by law enforcement officers to the public in regard to the operation of

authorized emergency vehicles. RCW 46.61.035 provides in part:

(1) The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual or suspected violator of the law or when responding to but not upon returning from a fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(2) The driver of an authorized emergency vehicle may:

. . .

(c) Exceed the maximum speed limits *so long as he does not endanger life or property*;

. . .

(4) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from *the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.*

(Italics ours.)

In addition to the above, both the Washington State Patrol and the Seattle Police Department have enacted formal policies which enunciate the respective agency's position as to the proper method for conducting a high-speed pursuit. They provide as follows:

WASHINGTON STATE PATROL
Personnel engaged in high-speed pursuit or emergency driving shall drive in such a manner so that *the safety of persons and property is not unduly endangered.*
*There may be times when it is prudent to cease pursuit. When, in the judgment of the officer, the mission of the department can no longer be served or when it becomes evident that continued pursuit will bring about unwarranted danger to the public or to the officer, the officer shall cease to chase and shall take whatever legal action is proper and available.*

(Italics ours.)

SEATTLE POLICE DEPARTMENT
In high-speed pursuit driving incidents, which originally were initiated by a misdemeanor violation, the police vehicle shall not be used to ram the suspect vehicle or to

otherwise physically force the suspect vehicle off the road. When a chase begins, officers should request other units to set up a roadblock if the opportunity exists.

There will be exceptions to the above policy, as in the case when a violator drives at high speed in the wrong way on a freeway and in the officer's judgment, it may be best to stop the violator immediately. However, in general, police vehicles shall not be used as a weapon in misdemeanor arrest incidents.

*No officer of this Department will be criticized if he selects not to pursue at high speeds an individual who, by his method of driving, has shown a total disregard for the safety of other users of the highways.*

(Italics ours.)

The defendants admit that enforcement officers have a duty to act with due regard for the safety of others, yet they contend that this duty, as set forth in RCW 46.61.035 and the above policy statements, is quite limited and can be violated only in instances where the police vehicle itself is involved in an accident. We find no merit to this argument.

██ Whenever a duty is imposed by statutory enactment, a question of law arises as to which class of persons is intended to come within the protection provided by the statute. *Wells v. Vancouver*, 77 Wn.2d 800, 467 P.2d 292 (1970). The statutory construction urged by the defendants would impose only half a duty and would disregard the intended purpose underlying the statute; *i.e.*, to provide for the safety of all persons and property from *all consequences* resulting from negligent behavior of the enforcement officers. The safety of those individuals within the intended class of persons protected by RCW 46.61.035 can be jeopardized just as much by the negligence of the pursuer as it can by the negligence of the party being pursued. The defendants' own policy statements recognize that at times it would be more prudent to cease a pursuit in order to protect the public. This clearly evidences that the defendants are aware that innocent third parties may be injured by the individual being pursued, and that it is their responsibility to determine whether the purpose of the pur-

suit warrants this risk. It is the duty of this court "to construe legislation so as to make it purposeful and effective." *O'Connell v. Conte,* 76 Wn.2d 280, 287, 456 P.2d 317 (1969); *see also Schwarz v. State,* 85 Wn.2d 171, 531 P.2d 1280 (1975). This mandates a statutory construction which does not limit the scope of RCW 46.61.035 to situations where only the police vehicle is directly involved in the accident. Therefore, we hold that the trial court erred in holding otherwise.

■ Directly connected with the question of duty is the issue of proximate cause. Having erroneously limited the scope of the defendants' duty, the trial court concluded that the sole and proximate cause of Mason's injuries was his collision with the unlawfully driven vehicle, thereby exonerating the defendants from liability. The fact that Bitton was obviously guilty of negligent conduct, which had a causal effect on the ultimate injuries incurred by Mason, does not necessarily relieve the defendants of their potential liability, since the law does not require that there be but one proximate cause for any given event. *State v. Jacobsen,* 74 Wn.2d 36, 442 P.2d 629 (1968). The State of Washington, like an overwhelming majority of jurisdictions, recognizes that if two individuals commit *independent acts of negligence* which *concur* to produce the proximate cause of an injury to a third person, they are to be regarded as concurrent tort-feasors, and "each is liable as if solely responsible for the injury caused by the concurrent acts of negligence." *Litts v. Pierce County,* 5 Wn. App. 531, 536-37, 488 P.2d 785 (1971).

■ Having stated the appropriate principles of law, the question becomes whether the evidence, viewed in a light most favorable to the plaintiff, raises a genuine issue as to a material fact. Upon reviewing the record, we find there is evidence that during the entire course of the pursuit, no information was transmitted to the respective officers stating the purpose of the pursuit or the fact that Bitton might be inebriated. Furthermore, during the chase several officers independently formed the opinion that Bitton would not

voluntarily stop; that there was no realistic way of stopping him; and that continuing the chase would pose a serious risk of a fatal accident. This information was never disseminated to either the officers' respective supervisors, radio dispatchers, or the other officers. This, in and of itself, is evidence of possible negligence since the officers' conduct, in allowing the pursuit to continue, conceivably would violate the policies of both defendants.

In conclusion, considering the record of this case in its entirety, it is clear that genuine issues of fact exist in regard to whether the defendants did breach their statutory duty, as enunciated in both RCW 46.61.035 and the departmental policies; and secondly, if they did breach their duty, was such a proximate cause of Mason's death. Therefore, we hold that the trial court erred in granting the defendants' motion for summary judgment, thereby denying the plaintiff his legal right to present these issues to an impartial jury for their ultimate determination.

▮▮▮▮▮ Aside from the issues of duty and proximate cause, the trial court held that the pursuit of those who violate the law is a discretionary act on the part of the officers, and therefore neither tortious nor actionable. Subsequent to the passage of RCW 4.96.010,[1] which abolished the principle of sovereign immunity, we provided an exception under which the government could still govern. *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 407 P.2d 440 (1965). The exclusion from tort liability was strictly limited to those acts involving *basic policy discretion*. The question, therefore, becomes one of distinction. At what point does discretionary conduct rise to the

---

[1]"All political subdivisions, municipal corporations, and quasi municipal corporations of the state, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their officers, agents or employees to the same extent as if they were a private person or corporation: *Provided,* That the filing within the time allowed by law of any claim required shall be a condition precedent to the maintaining of any action. The laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory." RCW 4.96.010.

special level which entitles the government and its agents to immunization? In *Evangelical,* we posed four preliminary questions,[2] intended to facilitate the distinction between that type of discretion exercised at a truly executive level, to which immunity was granted, from that discretion exercised at an operational level, which, if done in a negligent fashion, would subject the government to liability. Most recently, in *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975), Justice Hamilton correctly analyzed this limited exception, and concluded on page 12:

> The legislature of this state, in abrogating municipal immunity by way of RCW 4.96.010, painted with a broad brush. *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965). In *Evangelical* we held that negligent acts or omissions of state agents falling into the category of *"operational"* or *"ministerial"* functions—*not involving executive or administrative discretion*—to be performed pursuant to statutory direction gave rise to sovereign liability.

(Italics ours.) *See also King v. Seattle,* 84 Wn.2d 239, 525 P.2d 228 (1974). We are fully convinced that the initial decision to give or not to give chase, and the decision as to whether to continue the pursuit are properly characterized as *operational,* and not the "basic policy decision" discussed in *King,* at page 246. To now hold that this type of discretion, exercised by police officers in the field, cannot result in liability under RCW 46.61.035, due to an exception provided for basic policy discretion, would require this court to close its eyes to the clear intent and purpose of· the

---

[2]"(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?" *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 255, 407 P.2d 440 (1965).

legislature when it abolished sovereign immunity under RCW 4.96.010. If this type of conduct were immune from liability, the exception would surely engulf the rule, if not totally destroy it. Therefore, we conclude the exception for basic policy discretion does not apply to the facts of this case.

We do not now sit in judgment as to whether the plaintiff is, in fact, entitled to recover. Rather, we hold that there are genuine issues as to material facts which must be presented to a jury. Therefore, the Superior Court for King County erred in granting the defendants' motion for summary judgment, and this cause is remanded to that court for further proceedings consistent with this opinion.

STAFFORD, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied August 12, 1975.