[No. 8361–2–II.   Division Two.   April 13, 1987.]

THOMAS COFFEL, ET AL, *Appellants,* v. CLALLAM COUNTY, ET AL, *Respondents.*

*David V. Johnson* and *Johnson & Rutz,* for appellants.

*Michael A. Patterson* and *Lee, Smart, Cook, Martin & Patterson,* for respondents Clallam County, et al.

*Kenneth D. Williams* and *Johnson & Williams,* for respondents Salonen and Minker.

REED, C.J.—Plaintiffs appeal summary judgment dismissal of their suit against Clallam County and various county officials for failure of law enforcement officers to take action to prevent the destruction of plaintiffs' building and business premises. Plaintiffs allege claims under state tort law and 42 U.S.C. § 1983.

Plaintiff Thomas Coffel is the owner of a commercial building located in Clallam County, just outside the city of Sequim. Plaintiff James Knodel was Coffel's tenant; he operated a business known as Grandma's Attic in the building.

An ownership dispute arose between Coffel and Clinton Caldwell, a former owner of a one–half interest in the

building. Airing this dispute, Caldwell broke into Grandma's Attic during business hours by knocking the hinges off the back door with a sledgehammer. Defendant Salonen, Police Chief of Sequim, and defendants Speidell and Antil, both sheriff's deputies, arrived and learned of the ownership dispute. Deputy Speidell assured Knodel that appropriate legal action would be taken against Caldwell.

The deputies related this incident to defendant Fred DeFrang, an inspector with the sheriff's office. DeFrang took the problem to defendant Ken Cowsert, Chief Criminal Deputy Prosecuting Attorney. Cowsert advised DeFrang that this was a civil dispute, not involving a crime, and therefore the sheriff's office should not become involved. DeFrang informed the deputies of this decision.

The following day, Knodel called Deputy Speidell to learn what action would be taken against Caldwell. Speidell told Knodel that it was strictly a civil case, and that he "didn't want to hear any more about it."

That evening Caldwell and others came to the premises of Grandma's Attic and destroyed it. They pulled the front wall off the studs, broke every window and damaged some of Knodel's merchandise. Defendant Minker (Sequim police sergeant) and defendants Thomas and Fraker (sheriff's deputies) arrived while the demolition was in progress. Caldwell told the officers that he was the owner of the building, and was remodeling. Thomas called the dispatcher who related that Speidell and DeFrang had ordered that, beyond the prevention of bodily injury, no action should be taken by the officers. Coffel and Knodel arrived and told the officers that Caldwell had no right to demolish the premises. It is undisputed that the officers took no action to prevent the destruction. The affidavit of Knodel states: ". . . when I tried to approach Mr. Caldwell to try to get him to stop destroying my property, Deputy Thomas stopped me. He [Thomas] told me that Caldwell was here and he [Caldwell] was not going to leave, so I had to." In his supplemental affidavit Mr. Knodel states: ". . . the officers took affirmative action to prevent me and Mr. Coffel

from protecting our own property and told us we had to leave the premises."

Coffel and Knodel brought this suit against the City, the County and the individual officials. The trial court dismissed the City and its Police Department because the actions complained of took place outside of the city limits. Chief of Police Salonen and Police Officer Minker, who were deemed to have acted in their capacity as deputies of the County, remained as defendants. Plaintiffs do not appeal this ruling. Plaintiffs do appeal the ruling granting summary judgment in favor of the County and each of the individual defendants.

We first address plaintiffs' claims under 42 U.S.C. § 1983. That statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, . . .

The plaintiffs claim that the actions of all of the defendants served to deprive them of their property without due process of law in violation of the Fourteenth Amendment. We disagree because we conclude that the actions complained of simply cannot be characterized as an abuse of governmental power so as to implicate the due process clause.

Although plaintiffs' complaint alleges that the actions of the defendants here constituted a "knowing, intentional, willful, grossly negligent, reckless, and/or malicious deprivation," the facts of this case simply do not support such a claim. A review of the affidavits submitted to the trial court convinces us that here there was no intentional or deliberate deprivation of a constitutionally protected right. The shortcomings or omissions demonstrated in the County's, prosecutor's and sheriff's response to plaintiffs' situation rise at most to the level of a lack of due care. "[T]he Due Process Clause is simply not implicated by a *negligent* act

of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams,* 474 U.S. 327, 328, 88 L. Ed. 2d 662, 666, 106 S. Ct. 662, 663 (1986).

The first official act complained of here is the county prosecutor's determination that this was a civil dispute. The plaintiffs argue that this determination represents official policy of the County, and thus provides the basis for the County's liability for their losses. *See Pembaur v. Cincinnati,* 475 U.S. 469, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986).[1] However, the prosecutor cannot be said to have acted with deliberate indifference to plaintiffs' rights. He merely determined that, because he did not know who actually owned the building, he must decline to press charges against Caldwell for the previous day's encounter at Grandma's Attic. However disastrous this decision turned out to be for the plaintiffs, it is simply not the kind of abuse of power that calls the due process clause into play.

Nor did any of the individual sheriff's deputies intentionally deprive plaintiffs of their property. The facts at most support an allegation that a reasonable deputy would not have believed Caldwell's assertion that he was the owner and was remodeling. Again, a demonstration of failure to measure up to the conduct of a reasonable person is insufficient to support a section 1983 action. "To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries–old principle of due process of law." *Daniels v. Williams,* at 332. *See also Davidson v. Cannon,* 474 U.S. 344, 88 L. Ed. 2d 677, 106 S. Ct. 668 (1986).

Finally, plaintiffs contend that the County sheriff's failure properly to train and supervise his officers with regard

---

[1]The defendants place great reliance on *MacLean v. Bellingham,* 41 Wn. App. 700, 705 P.2d 1232, *review denied,* 104 Wn.2d 1022 (1985), for the proposition that prosecutor Cowsert's action did not represent "official policy" of the County. We would have agreed and disposed of the section 1983 issue on this basis had the Supreme Court not vacated the judgment in *MacLean* and remanded to Division One of this court for reconsideration in light of *Pembaur, MacLean v. Bellingham,* 475 U.S. 1105, 89 L. Ed. 2d 909, 106 S. Ct. 1509 (1986).

to forcible eviction worked an unconstitutional deprivation. However, an allegation of administrative negligence also fails to state a constitutional claim cognizable under section 1983. *Rizzo v. Goode,* 423 U.S. 362, 370–77, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976); *Hontz v. State,* 105 Wn.2d 302, 714 P.2d 1176 (1986). For these reasons, summary judgment as to the 42 U.S.C. § 1983 claim was appropriate.

We next address the plaintiffs' claims under state tort law. The plaintiffs allege that Deputy Prosecutor Cowsert is liable for his negligence in improperly advising the sheriff's department. It is clear, however, that Cowsert is protected from private suits by the absolute immunity afforded to prosecuting attorneys in the performance of their official duties. *Creelman v. Svenning,* 67 Wn.2d 882, 410 P.2d 606 (1966); *Loveridge v. Schillberg,* 17 Wn. App. 96, 561 P.2d 1107 (1977). Rendering advice to law enforcement officials as to whether certain conduct is criminal is squarely within the prosecutor's official duties.

Further, the County is immune from liability for the acts of its judicial and quasi–judicial officers in the performance of their duties. *Creelman v. Svenning, supra.*

Plaintiffs also bring negligence claims against each of the individual deputies. As to defendants Salonen, Speidell, Antil, and DeFrang, we hold that these deputies were under no legal duty to provide protection to the plaintiffs' property. The public duty doctrine recognizes that the duties of public officers normally are owed only to the general public. Generally, the statutory duty of officers to provide police protection, *see* RCW 36.28.010, and the common law duty of municipalities to provide police protection is owed to the public at large and is unenforceable as to individual members of the public. The leading cases establishing the continued vitality of this doctrine in Washington are *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 669 P.2d 451, 39 A.L.R.4th 671 (1983) and *J & B Dev. Co. v. King Cy.,* 100 Wn.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1983). *See also Hostetler v. Ward,* 41 Wn. App. 343, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986).

▮ An exception to the public duty doctrine provides that if a "special relationship" exists between the public officer and the plaintiff, a duty owed to the individual may arise. *Chambers–Castanes v. King Cy., supra.* Specifically, an actionable duty to provide police services will arise if (1) there is some form of privity between the police department and the victim that sets the victim apart from the general public, and (2) there are explicit assurances of protection that give rise to reliance on the part of the victim. *Chambers–Castanes v. King Cy.,* 100 Wn.2d at 286.

Here, privity existed as a consequence of the first contact between the officers and the plaintiffs. Moreover, special assurances giving rise to reliance were given at that first meeting. However, the following day, before Caldwell demolished Grandma's Attic, those assurances were explicitly withdrawn. After the telephone conversation with Deputy Speidell, the plaintiffs no longer had any right to rely on the assurances given. Consequently, plaintiffs' state law claim against these defendants, and against the County based on the inaction of these defendants, fits squarely within the rule of the public duty doctrine and must fail. Summary judgment in favor of these defendants was appropriate.

▮ As to those defendants who were on the scene of the demolition, however, summary judgment should not have been granted. Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979). Here, a genuine issue of material fact is raised by the affidavits of plaintiff Knodel when he states that the officers took affirmative action to prevent him from protecting his property against Caldwell's destruction. The public duty doctrine does not protect Sergeant Minker, or Deputies Thomas and Fraker. The doctrine provides only that an individual has no cause of action against law enforcement officials for failure to act. Certainly if the officers do act, they have a duty to act with reasonable care.

Defendants argue that even if there is a duty to act reasonably, those officers nevertheless cannot be liable for negligence because they are shielded by immunity. First, the defendants argue that the deputies are protected by the operation of prosecutorial immunity. We are urged to extend the scope of prosecutorial immunity to cover the deputies' actions because they relied on the advice of the prosecutor. Defendants rely on *Creelman v. Svenning, supra,* in which the prosecutor's absolute immunity was held to extend to his employers, the County and State. There is simply no authority, however, for the proposition that prosecutorial immunity should blanket other state and county employees. Moreover, the prosecutor's advice in this case was to do nothing, whereas the deputies' liability will lie, if at all, only for their affirmative actions.

Second, the defendants argue that the deputies possess a qualified immunity, shielding them from liability if they acted reasonably and in good faith. Defendants rely on *Guffey v. State,* 103 Wn.2d 144, 152, 690 P.2d 1163 (1984), which established that an officer is immune in an action for false arrest if he acted reasonably in carrying out a statutory duty according to procedures dictated by statute and superiors. We conclude that the reasoning of *Guffey* is inapposite to actions against law enforcement officials which lie in negligence. The material question which remains unanswered in this case is precisely whether the officers acted reasonably. An immunity afforded on the basis of the reasonableness of an officer's conduct adds nothing to his defense against an allegation of negligence. The trial court erred when it concluded as a matter of law that the officers were immune. It follows that summary judgment in favor of the County also was improperly granted, as any liability of the officers may be imposed on the County by reason of the doctrine of respondeat superior.

Plaintiffs' other assignments of error either have no merit or are not supported either by argument or appropriate authority. RAP 10.3(a)(5).

We affirm the ruling of the trial court dismissing all claims against all defendants except Sergeant Minker, Deputies Thomas and Fraker, and Clallam County. We affirm the dismissal in favor of these defendants insofar as any claim against them is predicated on their *failure* to take affirmative action to protect plaintiffs' property. We remand for trial the determination whether affirmative action was taken by these officers, and whether any action taken was below the standard of reasonable care and whether such action proximately resulted in damage to plaintiffs for which defendants are liable.

WORSWICK and ALEXANDER, JJ., concur.

Review denied by Supreme Court July 1, 1987.