[No. 12852-7-II.   Division Two.   July 16, 1990.]

THOMAS COFFEL, ET AL, *Appellants*, v. CLALLAM COUNTY,
ET AL, *Respondents*.

*David V. Johnson* and *Johnson & Rutz,* for appellants.

*Michael A. Patterson* and *Lee, Smart, Cook, Martin & Patterson, P.S.,* for respondents.

PEARSON, J.*—For the second time plaintiffs appeal from a summary judgment dismissing their negligence action against certain law enforcement officers for Clallam County. In the prior appeal, this court remanded as to certain defendants on narrow grounds: "We remand for trial the determination whether . . . any [affirmative] action taken was below the standard of reasonable care and whether such action proximately resulted in damage to plaintiffs . . .". *Coffel v. Clallam Cy.,* 47 Wn. App. 397, 405, 735 P.2d 686, *review denied,* 108 Wn.2d 1024 (1987).

The defendants essentially relied on the public duty doctrine to avoid liability. However, shortly after the court's decision in *Coffel,* the Supreme Court in *Bailey v. Forks,* 108 Wn.2d 262, 737 P.2d 1257, 753 P.2d 523 (1987) established a "failure to enforce" exception to the public duty doctrine. The trial judge refused to apply *Bailey* and ruled that the "law of the case" doctrine precluded him from doing so.

The issues are twofold: (1) whether this court should exercise its discretion and allow plaintiffs the benefit of *Bailey*; and, (2) if so, whether application of that case to the facts presented to the trial court would allow the claim to survive summary judgment. We hold that plaintiffs should have the benefit of *Bailey,* and that under the failure to enforce exception to the public duty doctrine an issue of fact is presented for the jury.

---

*Justice Vernon R. Pearson is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

Those facts, largely undisputed, are set forth in *Coffel.* The gist of plaintiffs' claim was that defendant officers stood by while plaintiffs' building and contents were being destroyed by Caldwell and others, and prevented plaintiffs from doing anything about the destruction even though the officers knew of plaintiff Coffel's claim of ownership and plaintiff Knodel's claim of possession. The facts are undisputed in support of this contention. The gist of the defense was that since there was a civil dispute over ownership, the officers were under no duty to intervene and that, in any event, the public duty doctrine shielded them from liability for their actions or failure to act. *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 669 P.2d 451, 39 A.L.R.4th 671 (1983).

Plaintiffs base their current appeal on *Bailey v. Forks, supra,* which creates potential liability where a law enforcement officer fails to enforce the known violation of a criminal statute.

Originally, plaintiffs claimed against the City of Sequim, the County, and the individual officials. *Coffel v. Clallam Cy.,* 47 Wn. App. at 400. This court upheld summary judgment in favor of the City and the officials not at the scene of the destruction. This court also held that the claims against the County and the individuals who were present must fail insofar as they were based on the inaction of the defendants.

In *Coffel,* this court held that plaintiffs had stated a cause of action by alleging that the officers acted affirmatively in preventing them from protecting their property against Caldwell's destruction. *Coffel,* 47 Wn. App. at 403–05. We affirmed the dismissal in favor of Sergeant Minker, Deputies Thomas and Fraker, and Clallam County "insofar as any claim against them is predicated on their *failure* to take affirmative action to protect plaintiffs' property." We remanded to the trial court for determination of "whether affirmative action was taken by these officers, and whether any action taken was below the standard of reasonable care and whether such action proximately resulted in damage to

plaintiffs for which defendants are liable." *Coffel,* 47 Wn. App. at 405.

On remand, the defendants again moved for summary judgment, and the motion was granted.

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). The appellate court views the evidence as the trial court did and the burden is on the moving party to show that there is no genuine issue of material fact. *Hartley,* 103 Wn.2d at 774. All facts and reasonable inferences therefrom will be drawn in favor of the nonmoving party. *Lamon v. McDonnell Douglas Corp.,* 91 Wn.2d 345, 349, 588 P.2d 1346 (1979). Even if the facts are undisputed, there still may be an issue for the trier of fact when conflicting inferences may be drawn from such undisputed facts. *Preston v. Duncan,* 55 Wn.2d 678, 681–82, 349 P.2d 605 (1960); *Southside Tabernacle v. Pentecostal Church of God, Pac. Northwest Dist., Inc.,* 32 Wn. App. 814, 821, 650 P.2d 231 (1982).

Plaintiffs argue that the trial court should have followed *Bailey* even though this court's decision in *Coffel* directed otherwise. They argue that *Bailey* first announced the failure to enforce exception to the public duty doctrine, and that the trial court should have applied the change in the law. This court issued the *Coffel* opinion on April 13, 1987; *Bailey* was decided on June 4, 1987. The Supreme Court denied review of *Coffel* on July 1, 1987.

■■ The law of the case doctrine usually requires adherence to decisions declaring the applicable law in previous appeals of the same case. *Folsom v. County of Spokane,* 111 Wn.2d 256, 263, 759 P.2d 1196 (1988). However, application of the doctrine is discretionary, and the court may reconsider the same legal issue in a subsequent appeal if the holding in the previous appeal is wrong, application

of the law of the case doctrine would result in manifest injustice, and there would be no injustice to the other party. *Folsom,* 111 Wn.2d at 256; *see also* RAP 2.5(c)(2). The court should also decline to follow a previous decision of its own or of a higher court if the controlling law changes between the time the decision was entered and the time the case is tried on remand. *Jordan v. Jordan,* 132 Ariz. 38, 643 P.2d 1008, 1012 (1982). Thus, in determining whether to follow our previous decision in *Coffel,* we must first determine whether the public duty doctrine changed.

The defendants assert that the law of the case doctrine should apply here because there has been no intervening change in the law. They argue that the "failure to enforce" exception to the public duty doctrine existed for several years prior to our decision in *Coffel,* at least since *Campbell v. Bellevue,* 85 Wn.2d 1, 530 P.2d 234 (1975). Thus, they argue, *Bailey* did not change the applicable law.

The public duty doctrine generally holds that public entities owe duties only to the public at large and those duties are not enforceable by individual members of the public. *Chambers–Castanes v. King Cy.,* 100 Wn.2d at 284. *Bailey* noted four categorical exceptions to the public duty doctrine, only two of which need be discussed here. The public entity (and its agents) has a duty to particular individuals if a relationship exists between the public agent and the particular individual and the individual relies on assurances by the public agent. This is called the "special relationship" exception. *Bailey,* 108 Wn.2d at 268. The public entity also has a duty if the public agent has actual knowledge of a statutory violation, the agent fails to take corrective action, and the plaintiff is within the class the statute was designed to protect. This was called the "failure to enforce" exception in *Bailey,* 108 Wn.2d at 268.

*Bailey* held that a public officer may be liable if he knows that an individual is under the influence of alcohol and fails to take the publicly incapacitated individual into custody as required by statute, and the intoxicated person injures another person. *Bailey,* 108 Wn.2d at 269–70.

*Bailey* cited two cases, *Campbell* and *Mason v. Bitton,* 85 Wn.2d 321, 534 P.2d 1360 (1975), as genesis for the failure to enforce exception. *Bailey,* 108 Wn.2d at 268. In *Campbell,* the plaintiffs alleged that an inspector had assured Campbell that a problem, dangerous wiring for outdoor lighting, had been corrected. *Campbell,* 85 Wn.2d at 9. However, the problem had not been corrected, and Mrs. Campbell received an electrical shock and died. *Campbell,* 85 Wn.2d at 4. The court explained that an exception to the public duty doctrine exists when "a relationship exists or has developed between an injured plaintiff and agents of the municipality . . .". *Campbell,* 85 Wn.2d at 10. *Campbell* has been interpreted as a "special relationship" case, *Chambers–Castanes,* 100 Wn.2d at 285–86; *Hartley,* 103 Wn.2d at 783, and does not clearly establish a failure to enforce exception.

Neither does *Mason* stand squarely for the failure to enforce exception. Instead, *Mason* held that police officers (and their public employer) may be held liable if their pursuit of a person fleeing in a motor vehicle does not meet the applicable standard of care. *Mason,* 85 Wn.2d at 328. There the duty was imposed by statute and police policy, *Mason,* 85 Wn.2d at 325, so the case does not fall into the "failure to enforce" exception but instead comes under a third exception, *i.e.,* the legislative intent category. *See Bailey,* 108 Wn.2d at 268. Thus, *Bailey* expanded and set new boundaries for the "failure to enforce exception." It is to that extent new law.

But before deciding whether to depart from the law of the case established by *Coffel,* we must examine the other prongs of the test: whether declining to apply *Bailey* would result in manifest injustice to the plaintiffs and whether reconsidering *Coffel* would result in injustice to the defendants. Neither party addresses the former question. In other cases the courts have given the inquiry short

consideration. *See Greene v. Rothschild,* 68 Wn.2d 1, 5, 402 P.2d 356 (1965); *Pier 67, Inc. v. King Cy.,* 78 Wn.2d 48, 469 P.2d 902 (1970), *cert. denied,* 401 U.S. 911 (1971). So do we, because the answer is obvious. Failure to reconsider the decision would result in manifest injustice to the plaintiffs by foreclosing a remedy to which they may be entitled were the new law to be applied.

With reference to the third prong, there is no showing that the defendants would be unjustly harmed. Thus, we find that it would be appropriate to reconsider *Coffel* and determine whether summary judgment was appropriate under *Bailey*'s failure to enforce exception.

██ As mentioned above, the failure to enforce exception requires plaintiffs to satisfy three factors: (1) governmental agents responsible for enforcing statutory requirements must have actual knowledge of a statutory violation; (2) the agents must fail to take corrective action; and (3) the plaintiff must be within the class the statute was designed to protect. *Bailey,* 108 Wn.2d at 268.

1. Did the governmental agents have actual knowledge of a statutory violation?

The defendants argue that the failure to enforce exception cannot apply to the facts of this case because the officers did not have subjective knowledge of a statutory violation. However, *knowledge of facts constituting the statutory violation,* rather than knowledge of the statutory violation itself, is all that is required. *See Honcoop v. State,* 111 Wn.2d 182, 190, 759 P.2d 1188 (1988). The trier of fact could determine that the defendants had knowledge of the facts constituting statutory violations, and that is enough. Police officers are presumed to know the penal laws.

2. Did the agents fail to take corrective action?

The officers and the County received notice on numerous occasions that the property belonged to neither Caldwell nor Pryor. Conversely, they had notice that Coffel claimed ownership and Knodel claimed to be a rightful tenant. The

transgressions of Caldwell and others could be characterized as any of several criminal violations: malicious mischief, RCW 9A.48.070; criminal trespass, RCW 9A.52.070; or burglary, RCW 9A.52.030.

Even assuming that Caldwell had some rightful claim to the property, the officers could not have safely assumed that the repossession by force and ensuing destruction was proper. A landlord cannot resort to physical force to evict a trespasser or a tenant unlawfully holding over, but must commence an unlawful detainer action. RCW 59.18.370–.410; Stoebuck, *The Law Between Landlord and Tenant in Washington, Part II,* 49 Wash. L. Rev. 1069–70 (1974). Thus, if the facts had been as Caldwell stated to the officers, he still would not have been entitled to use force to wrest possession from either Coffel or Knodel.

What is more, Coffel and Knodel would have been within their rights to use reasonable force to resist Caldwell's invasion and destruction of property. RCW 9A.16.020(3); *see also Peasley v. Puget Sound Tug & Barge Co.,* 13 Wn.2d 485, 506, 125 P.2d 681 (1942); *State v. Murphy,* 7 Wn. App. 505, 514, 500 P.2d 1276 (1972); *State v. Fischer,* 23 Wn. App. 756, 761, 598 P.2d 742 (1979).

3. Were the plaintiffs within the class the statute was designed to protect?

The statutes prohibiting violent and destructive invasion of property rights were designed to protect plaintiffs such as Coffel and Knodel. From the evidence presented, the trier of fact could find that the plaintiffs meet all three prongs required for application of the exception. The trier of fact could also find that the County's agents owed the plaintiffs a duty to enforce those statutory violations of which the agents had actual knowledge.

The law of the case doctrine should not apply here. Because favorable inferences from the evidence support plaintiffs' assertions that they were owed a duty, the defendants were not entitled to judgment as a matter of

law. The summary judgment is reversed, and the case is remanded for further proceedings.

PETRICH, A.C.J., and WORSWICK, J., concur.

Reconsideration denied September 5, 1990.

Review by Supreme Court pending March 15, 1991.