STEPHENS, J.
¶1 Cesar Beltran-Serrano, a mentally ill homeless man, was shot multiple times by Tacoma Police Officer Michel Volk, after a simple social contact escalated to the use of deadly force. Beltran-Serrano survived the shooting and, through a guardian ad litem, brought this action for negligence and assault and battery against the city of Tacoma (City). The Pierce County Superior Court dismissed the negligence claims on summary judgment, agreeing with the City that the sole avenue for any recovery must be an intentional tort claim for assault and battery.
¶2 We reverse. The fact that Officer Volk's conduct may constitute assault and battery does not preclude a negligence claim premised on her alleged failure to use ordinary care to avoid unreasonably escalating the encounter to the use of deadly force. Under well-established negligence principles, police officers owe a duty of reasonable care in situations such as this. Beltran-Serrano has presented evidence to allow a jury to find that the City failed to follow accepted practices in Officer Volk's interactions with him leading up to the shooting and that this negligence resulted in his injuries.
*610 FACTS AND PROCEDURAL HISTORY[1]
¶3 Beltran-Serrano suffers from mental illness and has limited English language proficiency. On June 29, 2013, he was homeless when Officer Volk noticed him standing on the corner of East 28th Street, an area of Tacoma where the police had received multiple complaints about panhandlers. Officer Volk parked her patrol vehicle near Beltran-Serrano and approached him with the goal of educating him about the City's panhandling laws. She did not have reasonable suspicion or probable cause to believe he was committing a crime.
¶4 As Officer Volk approached Beltran-Serrano, he laid down on his stomach and started digging in a hole. Officer Volk greeted Beltran-Serrano, but he looked up at her blankly and kept digging in the hole. Noticing that the hole contained mainly garbage, Officer Volk observed Beltran-Serrano pull out an old soda container, take a drink, and throw it back in the hole. When Officer Volk asked Beltran-Serrano if he understood English, he shook his head no. Officer Volk then radioed for a Spanish-speaking officer. Officer Jake Gutierrez, who spoke Spanish, was within one and a half to five minutes away.
¶5 Instead of waiting for Officer Gutierrez to arrive, Officer Volk attempted to engage Beltran-Serrano in conversation; he was nonresponsive. She attempted to get Beltran-Serrano to produce identification, gesturing to indicate she wanted to see an ID card. Beltran-Serrano began to pat his pockets as if to look for identification, but then he bent down and reached back into the hole. When Officer Volk moved closer to Beltran-Serrano and continued to address him in English, he became scared and started to run away. Officer Volk shot him in the back with a stun gun as he ran across the street. Clerk's Papers (CP) at 400-01. The stun gun did not have the desired effect, and Beltran-Serrano continued to run away. Id. Officer Volk then pulled out her duty weapon and fired multiple shots until Beltran-Serrano fell to the ground. CP at 401. The total time between when Officer Volk called for a Spanish-speaking officer and the shooting was 37 seconds. CP at 396.[2]
¶6 In resisting summary judgment, Beltran-Serrano offered declaration testimony from multiple witnesses who stated that they did not see Beltran-Serrano assault Officer Volk or brandish any weapon and that there was no instance of struggle or altercation on the street corner. Witnesses expressed concern as to why Beltran-Serrano was shot because he did not appear to be acting aggressively or making threatening motions. CP at 415-16, 432-33. A shooting scene reconstruction led a ballistics expert to conclude that "[n]one of the fired bullet paths to Beltran-Serrano support him 'swinging' or otherwise moving his arms at the time of receiving the gunshots." CP at 459.
¶7 Through a guardian ad litem, Beltran-Serrano brought this action against the City. In addition to a claim for assault and battery, his complaint alleged that Officer Volk improperly, unreasonably, and unnecessarily escalated the situation, and that the City failed to properly train and supervise officers to deal with the mentally ill and to exercise appropriate force. CP at 77. The City filed a motion for partial summary judgment, arguing it owed no duty of reasonable care to Beltran-Serrano. Specifically, the City asserted that (1) a negligence claim could not be based on an intentional tort, (2) the public *611 duty doctrine barred any negligence claim, and (3) a negligent training and supervision claim was unavailable because Officer Volk was acting within the scope of her employment. CP at 240-54. The Pierce County Superior Court granted the City's motion to dismiss the negligence claims and entered an order certifying for interlocutory review the issue of "whether a police officer owes a duty of reasonable care to act reasonably when using deadly force." CP at 698-99, 757.[3] Beltran-Serrano then filed a motion for direct discretionary review in this court, which our commissioner granted pursuant to RAP 4.2(a)(4).[4]
ANALYSIS
¶8 Claims of negligent law enforcement are not novel. Washington courts have long recognized the potential for tort liability based on the negligent performance of law enforcement activities. See, e.g. , Washburn v. City of Federal Way, 178 Wash.2d 732, 310 P.3d 1275 (2013) (negligent service of a protective order); Chambers-Castanes v. King County, 100 Wash.2d 275, 669 P.2d 451 (1983) (negligent failure to respond with police assistance in a timely manner); Mason v. Bitton, 85 Wash.2d 321, 534 P.2d 1360 (1975) (negligent police vehicle chase); Garnett v. City of Bellevue, 59 Wash. App. 281, 796 P.2d 782 (1990) (negligent infliction of emotional distress for officers' harsh and offensive language in responding to a call that plaintiffs were loitering). Indeed, the City readily acknowledges that such liability is consistent with the broad waiver of sovereign immunity for municipalities under RCW 4.96.010. Br. Of Resp't at 10.
¶9 The question in this case is whether a claim of negligence can be based on Officer Volk's shooting of Beltran-Serrano when it is clear the shooting was intentional, i.e., volitional. The City insists that "[t]here is no such thing as the negligent commission of an intentional tort." Id. at 18. The City further argues that the public duty doctrine precludes liability because the statutory duty "to enforce the laws and keep the peace ... is imposed solely on government and owed to the public at large." Id. at 36. We believe the City misunderstands both the nature of Beltran-Serrano's negligence claim and the nature of its law enforcement duty.
A. An Intentional Tort Claim Does Not Foreclose a Negligence Claim Premised on the Failure To Use Reasonable Care To Avoid the Use of Force
¶10 In arguing that Beltran-Serrano seeks to allege negligence in the commission of an intentional tort, the City fails to appreciate the nature of Beltran-Serrano's claim. The core of his negligence claim is that Officer Volk unreasonably failed to follow police practices calculated to avoid the use of deadly force. CP at 77-78. Beltran-Serrano focuses on Officer Volk's negligence leading up to the shooting, including her failure to respond appropriately to clear signs of mental illness or impairment, her decision to continue to engage with Beltran-Serrano in English, and her decision to prevent him from walking away. The negligence allegations also identify Officer Volk's lack of adequate training and her failure to recognize the ineffectiveness of using a stun gun against a mentally ill individual.[5] While these negligence claims relate *612 to events that culminated in Officer Volk intentionally shooting Beltran-Serrano, they do not assert a "negligent intentional shooting." Instead, they require consideration of the totality of the circumstances involved in the encounter between Officer Volk and Beltran-Serrano, and identify potential negligence in the series of actions leading up to the decision to shoot.
¶11 The District of Columbia Court of Appeals has considered cases similar to this one and has explained the distinction between negligence and intentional tort claims arising from police use of force. District of Columbia v. Chinn, 839 A.2d 701, 710 (D.C. 2003). The court observed, " '[W]here there is sufficient evidence to submit to a jury the question of assault and battery, there may be, on the facts of a particular case, sufficient evidence to submit the question of negligence as well.' " Id. (alteration in original) (quoting Holder v. District of Columbia , 700 A.2d 738, 742 (D.C. 1997) ). Cases allowing for both claims present a set of common characteristics:
Each involves the use of deadly force. Each invokes a police regulation establishing a standard of care with respect thereto that is arguably distinct from the excessive force standard. Each involves alternate scenarios in at least one of which a distinct act of negligence, a misperception of fact, may have played a part in the decision to fire. Each involves a negligent act that precedes the application of the relevant force of resort to firearms, i.e., prior to the pulling of the trigger.
Id. at 710-11. These characteristics underscore how ordinary negligence principles apply in situations that involve both a claim of battery or unprivileged use of force and the duty to act reasonably in carrying out law enforcement functions. The series of actions culminating in the use of deadly force may be analyzed in its constituent parts or, alternatively, as involving either negligent or intentional conduct. Id . ; see also Hayes v. County of San Diego, 57 Cal. 4th 622, 626, 305 P.3d 252, 160 Cal. Rptr. 3d 684 (2013) (recognizing negligence claim may be asserted for police use of deadly force "if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable").[6]
¶12 To understand how negligent acts leading up to the ultimate use of force may be delineated from the use of force itself, one need consider only a variation on the facts of this case. A person in Beltran-Serrano's situation might just as readily be injured, not by an officer shooting, but perhaps by running into a car as he attempts to flee from the officer in panic. The same acts of negligence remain under either scenario, but we would not describe the latter scenario as involving an intentional tort. By focusing on the alleged acts of negligence during the totality of Officer Volk's encounter with Beltran-Serrano, we avoid mischaracterizing this case as involving "nothing but" an intentional tort.
¶13 Our analysis also accords with the practice in Washington of allowing claims to be pursued under alternative, even inconsistent, theories of recovery. CR 8(e)(2) (specifying *613 that a party may plead "as many separate claims or defenses as the party has regardless of consistency"). Here, the fact that Beltran-Serrano may have a valid intentional tort claim for excessive force has no bearing on the viability of his negligence claim for violation of the duty to act reasonably. A jury could find one claim or the other (or neither claim) to be supported. The City certainly has not conceded that Beltran-Serrano has an assault and battery claim as opposed to a negligence claim. All claims remain for trial.
¶14 The City misreads Boyles v. City of Kennewick, 62 Wash. App. 174, 813 P.2d 178 (1991), as precluding overlapping claims of negligence and assault and battery under Washington law. See Br. of Resp't at 9, 22; Resp. to Mot. for Discr. Review at 12. Boyles merely explains that a police officer may be an intentional tortfeasor and "is liable as such for assault and battery if unnecessary violence or excessive force is used in accomplishing the arrest." Boyles, 62 Wash. App. at 176, 813 P.2d 178 (citing 6A C.J.S. Assault & Battery § 27 (1975) ). This statement alone, however, does not support the City's argument because it does not foreclose a separate claim premised on negligence. The authority cited in Boyles for the above statement is a Corpus Juris Secundum entry describing claims for assault and battery. Not only does Boyles fail to limit actions against law enforcement to intentional torts, it specifically states that a claim for negligence against a police officer remains possible:
As Ms. Boyles points out, there are no Washington cases mandating a claim of assault and battery for all injuries inflicted during or after an arrest. While a claim for negligence against a police officer is possible, it is not raised by the factual allegations of the complaint in this case and, therefore, does not relate back to the original pleadings; additional facts would be necessary to support it.
Id. at 178, 813 P.2d 178 (emphasis added). Here, Beltran-Serrano's amended complaint asserted a valid claim of negligence and alleged facts necessary to support it. CP at 73-79. Consistent with Washington case law and CR 8(e)(2), Beltran-Serrano is allowed to pursue both an intentional tort and a negligence action.
¶15 The City further argues that allowing a negligence action based on police use of force would "circumvent both the defense of self-defense and the standard of objective reasonableness applicable to an excessive force claim." Br. of Resp't at 23. We disagree. The statute the City relies on, RCW 9A.16.040, governs "[j]ustifiable homicide or use of deadly force by public officer, peace officer, [or] person aiding." (Boldface omitted.) This statute defines when police officers are justified in using deadly force. See id. Regardless of whether Beltran-Serrano's claims sound in negligence or assault and battery, the statute allows Officer Volk to argue to the jury that her actions were privileged under the good faith standard of the statute that requires consideration of "all the facts, circumstances, and information known to the officer at the time." RCW 9A.16.040(4). This statutory standard fully accords with Beltran-Serrano's view that the facts of this case must be evaluated under the totality of the circumstances, including Officer Volk's preshooting conduct. Br. of Appellants at 27-28.
¶16 We hold that Beltran-Serrano's intentional tort and negligence claims may coexist under the facts of this case. Considering the totality of the circumstances, the allegations support a claim for negligence that does not amount to a "negligent intentional shooting." Moreover, all facts remain to be determined at trial, and negligence and intentional tort claims may be pleaded in the alternative under CR 8(e)(2). The superior court erred in dismissing the negligence claims as a matter of law.
¶17 A remaining question is whether Beltran-Serrano's negligence claims should nonetheless be dismissed in light of the public duty doctrine. Stated differently, we must determine whether the duty owed by Officer Volk represents a tort duty owed specifically to Beltran-Serrano rather than a nonactionable duty owed to the public as a whole.
B. Officer Volk Owed a Duty in Tort to Beltran-Serrano Based on Her Affirmative Conduct throughout Their Interaction
¶18 The public duty doctrine recognizes that governments, unlike private persons, *614 are tasked with duties that are not actionable duties within the meaning of tort law. Washburn, 178 Wash.2d at 753, 310 P.3d 1275. The central purpose behind the public duty doctrine is to ensure that governments do not bear greater tort liability than private actors. Munich v. Skagit Emergency Commc'ns Ctr., 175 Wash.2d 871, 886, 288 P.3d 328 (2012) (Chambers, J., concurring).
¶19 To establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public. Babcock , 144 Wash.2d at 785, 30 P.3d 1261. While there are four exceptions to the public duty doctrine that provide for liability even in the face of otherwise public duties, see Munich, 175 Wash.2d at 879, 288 P.3d 328, an enumerated exception is not always necessary to find that a duty is owed to an individual and not to the public at large.[7] Instead, the public duty doctrine is simply a "focusing tool" to ensure that the government is not held liable in tort for duties owed solely to the general public. Id. at 878, 288 P.3d 328.
¶20 Importantly, this court has recognized that the public duty doctrine comes into play when special governmental obligations are imposed by statute or ordinance. Id. at 886, 288 P.3d 328 (Chambers, J., concurring). As to common law negligence, Justice Chambers pointed out in his concurrence in Munich that "[t]his court has never held that a government did not have a common law duty solely because of the public duty doctrine." Id. at 886-87, 288 P.3d 328 (emphasis added).[8] To apply the doctrine so broadly would inappropriately lead to a partial restoration of immunity by carving out an exception to ordinary tort liability for governmental entities. Id. at 892, 288 P.3d 328 (Chambers, J., concurring). This would undermine the value of tort liability to protect victims, deter dangerous conduct and provide a fair distribution of risk of loss. Eastwood v. Horse Harbor Found., Inc., 170 Wash.2d 380, 407, 241 P.3d 1256 (2010) (Chambers, J, concurring).
¶21 At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others. Restatement (Second) of Torts § 281 cmt. e (Am. Law Inst. 1965) explains that "the duty established by law to refrain from the negligent conduct is established in order to protect the other from the risk of having his interest invaded by harm resulting from one or more of this limited number of hazards." This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance. See Robb v. City of Seattle, 176 Wash.2d 427, 295 P.3d 212 (2013) ; see also Coffel v. Clallam County, 47 Wash. App. 397, 403, 735 P.2d 686 (1987) (recognizing that, "if the officers do act, they have a duty to act with reasonable care"). In Washington, this principle dates to at least the 1926 case of Jahns v. Clark , which specifically recognized an actionable duty on the part of law enforcement officers exercising deadly force. 138 Wash. 288, 296-97, 244 P. 729 (1926) (holding sheriff and deputies liable on a bond for civil damages arising from an "intentional or negligent shooting").[9]
*615 ¶22 Garnett illustrates how recognizing tort liability for negligent law enforcement activities is consistent with the public duty doctrine. 59 Wash. App. at 287, 796 P.2d 782. There, the Court of Appeals identified a law enforcement situation where, even though no public duty doctrine exception directly applied, the city was liable for its officers' negligence. Id. Garnett concerned an interaction between police officers and two women who were allegedly soliciting customers at a Bellevue hotel and refused to leave. Id. at 282, 796 P.2d 782. During the interaction, the police officers accused the women of being prostitutes, saying things like " 'You know what you did and you know what you are,' " and " 'I am going to pick you up and take you downtown because we don't want your kind here.' " Id. at 284, 796 P.2d 782. In addressing the plaintiffs' claims for negligent infliction of emotional distress, the Court of Appeals focused on the fact that harm resulted from the officer's direct contact with the plaintiffs, not the performance of a general public duty of policing. Id. at 286, 796 P.2d 782. Even though the facts did not fit neatly into a previously identified exception, the Court of Appeals correctly rejected the public duty doctrine as a basis to preclude liability. Id. at 286-287, 796 P.2d 782.
¶23 The present case aligns with the analysis in Garnett. As noted, under the common law, "if the officers do act, they have a duty to act with reasonable care." Coffel , 47 Wash. App. at 403, 735 P.2d 686. Beltran-Serrano's negligence claims arise out of Officer Volk's direct interaction with him, not the breach of a generalized public duty. The City therefore owed Beltran-Serrano a duty in tort to exercise reasonable care. Recognizing such a duty does not open the door to potential tort liability for a city's statutorily imposed obligation to provide police services, enforce the law, and keep the peace. These statutory duties have always been, and will continue to be, nonactionable duties owed to the public at large. In this case, however, the specific tort duty owed to Beltran-Serrano arises from Officer Volk's affirmative interaction with him. The public duty doctrine does not apply to prevent the City from being found liable in tort.[10]
CONCLUSION
¶24 The superior court wrongly dismissed Beltran-Serrano's negligence claims, which are not foreclosed by his intentional tort claim. Under Washington common law, the City owes a duty to refrain from causing foreseeable harm in the course of law enforcement interactions with individuals. Because the duty at issue in this case, grounded in common law negligence, is owed specifically by Officer Volk to Beltran-Serrano rather than to the public as a whole, the public duty doctrine does not apply. Beltran-Serrano has properly pleaded a separate negligence cause of action and identified genuine issues of material fact regarding Officer Volk's breach of the duty to act reasonably. We reverse the superior court order granting summary judgment and remand to the trial court for further proceedings consistent with this opinion.
WE CONCUR:
Fairhurst, C.J.
González, J.
Gordon McCloud, J.
Yu, J.

Because we are reviewing an order granting summary judgment, we consider all facts and reasonable inferences in the light most favorable to Beltran-Serrano, the nonmoving party. Babcock v. Mason County Fire Dist. No. 6, 144 Wash.2d 774, 784, 30 P.3d 1261 (2001) (plurality opinion). Our review is de novo. Id.

The City offers a different view of the facts. According to Officer Volk's statement, after Beltran-Serrano reached back into the hole, he grabbed what appeared to be a piece of construction pipe that was bent into an oval shape. CP at 365. Beltran-Serrano swung the object at Officer Volk's upper body, and she blocked the strike with her left forearm before giving chase to Beltran-Serrano as he ran into the street. Id. As Beltran-Serrano was running away, Officer Volk discharged her stun gun, hitting Beltran-Serrano in the back, at a distance of approximately seven yards. CP at 366. After the stun gun appeared to have no effect, Officer Volk maintains that Beltran-Serrano turned toward her, raised the object above his head as if to strike, and began to move in her direction. Id. Officer Volk then drew her firearm and fired until Beltran-Serrano "dropped the pipe and fell to the ground." Id.

The order on summary judgment dismisses "plaintiff's negligence claims ... in their entirety." CP at 699. However, the separate certification order framing the issue for review does not reference the negligence claims based on the City's duty to train and supervise employees. CP at 757. Beltran-Serrano's motion for discretionary review is similarly limited to this focus. See Mot. for Discr. Review at 1. Given the limited issue identified in the certification order and the motion for discretionary review, we have not separately addressed Beltran-Serrano's negligence theory based on the City's training and supervision of its employees. We leave it to the superior court on remand to determine, consistent with the reasoning in this opinion, whether that negligence theory remains for trial.

The City separately sought discretionary review in the Court of Appeals of an order granting partial summary judgment to Beltran-Serrano concerning the reasonableness of medical expenses. That matter has been stayed pending this review.

Beltran-Serrano offered testimony from a police practices expert that Officer Volk failed to recognize Beltran-Serrano was affected by mental illness and did not follow basic police procedures. Br. of Appellants at 10-11; see CP at 473-81. In her deposition, Officer Volk stated that she perceived no basis to determine whether Beltran-Serrano was mentally ill. CP at 475. Beltran-Serrano's expert reviewed Officer Volk's training records and found her last course completed on mental health was in February 2013. Id. Officer Volk was unable to recall any training that addressed how to approach someone suffering from mental illness. CP at 476. Beltran-Serrano also presented the testimony of Volk's fellow officer Loretta Cool, who explained that upon approaching the same situation as Officer Volk, she would have considered the person to have been under the influence of drugs or mentally ill. CP at 494.

The federal district court cases the City relies on miss this overlap between negligence and battery. See Roufa v. Constantine, No. C15-1379JLR, 2017 WL 120601 (W.D. Wash. Jan. 11, 2017) (court order); Lawson v. City of Seattle, No. C12-1994-MAT, 2014 WL 1593350 (W.D. Wash. Apr. 21, 2014) (court order); Willard v. City of Everett, No. C12-14 TSZ, 2013 WL 4759064 (W.D. Wash. Sept. 4, 2013) (court order), aff'd , 637 F. App'x 441 (2016). These cases posit a negligence claim based on the unreasonable use of force or an unlawful arrest. This does not accurately describe the negligence Beltran-Serrano alleges. As noted, his negligence claim is premised on Officer Volk's failure to understand and apply accepted police procedures in dealing with a mentally ill individual who has limited English language proficiency, and in avoiding the use of force. The gravamen of the negligence claim is the mishandling of the encounter, not the use of excessive force.

The four recognized exceptions to the public duty doctrine are (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship. Munich, 175 Wash.2d at 879, 288 P.3d 328. "If any one of the exceptions applies, the government is held as a matter of law to owe a duty to the plaintiff." Id.

Justice Chambers's concurring opinion is precedential because it received five votes from justices who also signed the majority opinion. See Shizuko Mita v. Guardsmark, LLC, 182 Wash. App. 76, 83 n.2, 328 P.3d 962 (2014) (recognizing stare decisis effect of Justice Chambers's concurrence in Munich ).

Of course, tort liability for law enforcement activities may be limited by the legislature. Statutes specifically mandate the use of a gross negligence standard for a variety of law enforcement related activities. See, e.g., RCW 71.05.510 (detention of a person suffering from mental illness for more than the allowable number of days); RCW 7.69A.040 (failure to provide notice of rights to a child witness or victim); RCW 9.95.204 (supervision of misdemeanant offenders); RCW 4.24.550 (release of information/ classification level of sex offender information to the public). No statute currently alters the reasonable care standard for law enforcement in the use of deadly force. As noted above, RCW 9A.16.040 imposes a "good faith" standard and provides that the use of deadly force is justifiable when "necessarily used by a peace officer meeting the good faith standard of this section to overcome actual resistance to the execution of the legal process, mandate, or order of a court or officer, or in the discharge of a legal duty." RCW 9A.16.040(l)(b).

Even if we believed it necessary to identify an enumerated exception to the public duty doctrine, Beltran-Serrano persuasively argues that the rescue doctrine exception applies here. The rescue doctrine recognizes that a duty to exercise reasonable care arises when a person undertakes "to render aid to or warn a person in danger." Brown v. MacPherson's, Inc., 86 Wash.2d 293, 299, 545 P.2d 13 (1975). Here, Officer Volk initiated contact with Beltran-Serrano and sought to educate him about panhandling laws. In the course of their interaction, Officer Volk's unreasonable escalation of the encounter to the use of deadly force significantly increased the risk of harm to Beltran-Serrano.