# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| KYLE J. BRANCHICK, an individual; and the ESTATE OF RUTH L. BRANCHICK, through its personal representative, Kyle J. Branchick,<br><br>        Appellants,<br><br>   v.<br><br>MELROSE STATION HOMEOWNER'S ASSOCIATION, a Washington non-profit association (aka "Victory Landing"); INVEST WEST MANAGEMENT, LLC, a Washington for-profit corporation; and PIERCE COUNTY, a municipal corporation,<br><br>        Respondents. | No. 56999-0-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

CRUSER, A.C.J. – Kyle Branchick individually, and in his capacity as the personal representative of his mother's estate (collectively Branchick) sued his homeowners' association, Melrose Station Homeowners Association (Melrose Station) and the homeowners' association's property management company, Invest West Management, LLC (Invest West), for breach of contract, bad faith, nuisance, violation of the Consumer Protection Act (CPA),[1] negligence,

---

[1] Ch. 19.86 RCW.

negligent infliction of emotional distress, and violations of the Washington State Law Against Discrimination (WLAD).[2]

He also sued Pierce County for breach of contract, nuisance, negligence, negligent infliction of emotional distress, and violations of the WLAD. Melrose Station and Invest West moved for partial summary judgment on Branchick's WLAD claims. The trial court granted Melrose Station and Invest West's partial motion for summary judgment on Branchick's WLAD claims and their subsequent motion for summary judgment on the remainder of Branchick's claims against them. The trial court also granted Pierce County's motion for summary judgment on all of Branchick's claims against the County. Branchick appeals. Assuming he prevails on the merits of his claims, Branchick contends that he is entitled to fees and costs incurred below and on appeal.

We hold that the trial court properly dismissed the Branchick's claims because there were no genuine issues of material fact and Melrose Station, Invest West, and Pierce County were entitled to judgment as a matter of law. Accordingly, we affirm the trial court's three orders dismissing each of Branchick's claims on summary judgment. We further award attorney fees and costs to Melrose Station and Invest West on the breach of contract claims.

FACTS

A. BACKGROUND

In 2002, Ruth Branchick and her husband, Donald Branchick, purchased a home in the Melrose Station neighborhood, a 69-lot subdivision located in Pierce County. The deed stated the property was conveyed subject to the "covenants, conditions, restrictions, easements[,] and liability for assessments contained in instrument: recording number 200112310723 [Declaration

---

[2] Ch. 49.60 RCW.

of Protective Covenants, Conditions, Easements & Restrictions for Melrose Station (Declaration)]." Clerk's Papers (CP) at 164, 20 (capitalization omitted). The plat and Declaration were recorded in 2001. Pierce County took control of the roadways and sidewalks in Melrose Station when it approved and recorded the plat for Melrose Station. The Declaration prohibited parking on sidewalks, however enforcement by the Association of the provisions in the Declaration was discretionary.

The Declaration was created to enhance and protect the value, desirability, and attractiveness of the properties for the benefit of all property owners. The Declaration established mandatory assessments on property owners, provided for the maintenance of common areas, and allowed the association to delegate management authority to an agent. The Declaration also provided for parking restrictions, an enforcement process for alleged violations of the Declaration, and powers of Melrose Station, including to adopt additional rules and restrictions.

In June 2009, the homeowners' association created a "Rules Enforcement Procedure" that provided a due process mechanism to enforce the "Declaration, Bylaws, and Rules and Regulations." *Id.* at 60 (capitalization omitted). The Board also adopted "Rules and Regulations" that established new rules for property owners and their guests to follow and penalties for violating provisions of the Declaration, Bylaws, and Rules and Regulations. *Id.* at 62 (capitalization omitted). One of the rules prohibited residents from parking on the roads in the neighborhood for a period exceeding 24 hours unless the person had written authorization, and also prohibited parking on any portion of a lot that was not a hard surface driveway or designated parking area. The Rules and Regulations did not explicitly prohibit parking on the sidewalks.

In 2014, Kyle Branchick, Ruth and Donald's son, moved into his mother's home to care for his parents. Donald passed away a year later. Thereafter in or around 2018, Ruth became wheelchair bound due to her deteriorating physical health. Despite Ruth's declining mobility over the years, she enjoyed and requested to be taken on walks in her community to look at flowers, bird watch, watch the neighborhood children play, and socialize with her neighbors.

Ruth used the sidewalks in her neighborhood to get around in her wheelchair. However, Ruth had difficulty navigating the neighborhood in her wheelchair because of sidewalk obstructions including parked cars, basketball hoops, garbage cans, and other barriers caused by neighbors and unidentified others.

Kyle Branchick complained about the obstructions to the homeowners' association, property manager, and Pierce County. Branchick claims that his complaints were ignored by Melrose Station and Invest West. Melrose Station and Invest West contend, however, that they attempted to address his complaints. Branchick and Pierce County also dispute whether Pierce County ignored his pleas for assistance.

After Branchick began complaining about the obstructions, some of his neighbors refused to move their vehicles on the sidewalks, and became openly hostile towards the Branchicks. This hostility made Ruth afraid to leave her home and made living conditions "nearly intolerable." *Id.* at 216. Branchick's attempts to get Melrose Station and Invest West to act concerning the sidewalk obstructions were unsuccessful. Branchick also complained that a gravel pathway connecting two common areas in the development needed to be paved so Ruth could use her wheelchair to access it.

In December 2017, Kyle Branchick called Dan Hansen, a Pierce County engineer at the Planning and Public Works Department. The next day, Hansen met with Branchick in Branchick's neighborhood to document Branchick's concerns including improperly parked vehicles on the sidewalks. Hansen notified Pierce County maintenance staff that the sidewalks contained moss and debris, which the staff removed in January 2018.

Pierce County engineers subsequently determined that some of the sidewalk ramps within the neighborhood were noncompliant with ADA standards. The County decided to reconstruct the sidewalk ramps to bring them into compliance with the ADA. Project design began in early 2018 and the project was mostly completed in August 2019. Pierce County parked vehicles on the sidewalks during construction. The County also, according to Branchick, parked its vehicles on the sidewalks even when no work was being performed.

B. DEPARTMENT OF JUSTICE LETTERS

In July 2018, Branchick sent a letter to the Department of Justice that was referred to the Federal Highway Administration (FHWA) alleging that Pierce County violated the Americans with Disabilities Act of 1990[3] and Section 504 of the Rehabilitation Act of 1973.[4] Branchick sent another letter to the Department of Justice in January 2020 this time criticizing Melrose Station and Invest West's lack of compliance with the Declaration, and setting forth grievances against neighbors and Board members. Branchick also alleged that Pierce County was not fixing the problem and its employees were making it worse by parking on the sidewalks.

---

[3] 42 U.S.C. §§ 12101-12213.

[4] 29 U.S.C. § 794.

The FHWA completed an investigation of the complaint and sent a "Letter of Finding" to the County on July 15, 2020. *Id.* at 408. In its Letter of Finding, the FHWA found that Pierce County was not in compliance with the ADA and Section 504 requirements because it failed to maintain accessible sidewalks, noting that parked vehicles and basketball hoops were on sidewalks blocking access. The FHWA further noted that "[t]his is a County Code enforcement issue." *Id.* at 409. The FHWA stated that Pierce County was required to maintain accessible sidewalks through "code enforcement" so that obstructions were not blocking access to them. *Id.* The FHWA warned Pierce County that if it failed to voluntarily comply, the FHWA *may* refer the complaint to the Department of Justice for action.

In response to the FHWA's Letter of Finding, on October 16, 2020, Pierce County sent a letter to the FHWA addressing the agency's concerns. In relevant part, the County stated in its letter that:

> Pierce County . . . has refined the internal tasks and duties of our Code Enforcement staff to include an emphasis on working with constituents on the removal of sidewalk and sidewalk access obstructions such as basketball hoops, soccer nets, parked cars, or other obstructions. Staff has been instructed to be more proactive on the removal of such obstructions and we are committed to taking quick action to resolve these issues when identified in the future. Staff is also working with our Community Liaison Sheriff Deputy to more proactively ticket vehicles that park and block sidewalk accessibility.

> We believe these measures will achieve compliance with the requirements of the Americans with Disabilities Act . . . regarding maintaining accessible sidewalks so obstructions are not blocking access to the sidewalks.

*Id.* at 405.

C. HUMAN RIGHTS COMMISSION COMPLAINT

Shortly after sending his first letter to the Department of Justice, Branchick filed a complaint with the Human Rights Commission (HRC) against the president of Melrose Station,

the company Invest West, and Sumiko Duarte, the Invest West property manager of Melrose Station, alleging disability discrimination based on a failure to reasonably accommodate Ruth's disability. The complaint alleged that Melrose Station and Invest West ignored Branchick's request to make the sidewalks and wheelchair ramps accessible and that the areas not be blocked by resident vehicles.

In 2019, the HRC investigated the complaint and issued a finding of no reasonable cause. The HRC concluded that the preponderance of the evidence did not support a finding that Branchick was subject to a failure to grant reasonable accommodation to a disability in housing. The HRC reasoned in part that Melrose Station and Invest West did not have the legal authority to enforce violations of parking on sidewalks and on the streets within the community because the streets were public. The HRC further reasoned that Melrose Station and Invest West did not have the legal authority to perform work related to the construction, improvement, maintenance, and repair of structures such as ramps, and they had no duty to pave the gravel path Branchick wanted paved because it was on "private common property." *Id.* at 184.

Additionally, the HRC noted that Melrose Station and Invest West did not ignore Branchick's request for accommodation. The HRC also concluded that the preponderance of the evidence did not support a finding that Branchick was subjected to discriminatory terms and conditions in housing based on disability. The HRC attached a notice advising Branchick of how to request a reconsideration of the finding. Branchick did not request a reconsideration of the HRC's finding of no reasonable cause.

D. SUPERIOR COURT COMPLAINT

Ruth Branchick passed away in May 2020. Kyle Branchick, acting both in his individual capacity and as the personal representative of his mother's estate, sued Melrose Station and Invest West for breach of contract, bad faith, nuisance, violation of the CPA, negligence, negligent infliction of emotional distress, and violations of the WLAD. In the same action, Branchick also sued Pierce County for breach of contract, nuisance, negligence, negligent infliction of emotional distress, and violation of WLAD. Branchick attached a copy of the Declaration, the Rules Enforcement Procedure, the Rules and Regulations of Melrose Station, Melrose Station's contract with Invest West, and two letters between Pierce County and Melrose Station and Invest West.

E. SUMMARY JUDGMENT MOTIONS

1. MELROSE STATION AND INVEST WEST'S MOTION FOR PARTIAL SUMMARY JUDGMENT

On February 1, 2022, Melrose Station and Invest West moved for partial summary judgment requesting that the court dismiss Branchick's WLAD claims under chapter 49.60 RCW on the grounds that the statute did not apply to the homeowners' association on the facts alleged by Branchick. Melrose Station and Invest West claimed that Branchick did not have a valid WLAD claim against them because the streets and sidewalks in Melrose Station were not under their control, the common areas were not places of public accommodation, they did not engage in "real estate transactions" with Branchick or anyone else, and they did not provide any "real estate transaction" related facilities or services to Branchick or anyone else. *See id.* at 106-117. Melrose Station and Invest West attached, inter alia, the Declaration, Sumiko Duarte's declaration, and the HRC filings and order.

Branchick contested Melrose Station and Invest West's partial motion for summary judgment, arguing among other things, that the WLAD must be construed liberally, the WLAD's declaration of civil rights was illustrative, and that Melrose Station and Invest West discriminated against the Branchick in failing to enforce the Declaration. Branchick also claimed that the common areas and sidewalks were places of public accommodation, Melrose Station and Invest West engaged in a real estate transaction, Melrose Station and Invest West encouraged unfair practices, and the HRC's determination letter was inadmissible and had no estoppel effect. Branchick attached a declaration from himself, a declaration from his attorney, which contained several attachments, and a declaration from one of his neighbors to his response to the partial motion for summary judgment. Melrose Station and Invest West filed a reply to Branchick's response.

Following argument on Melrose Station and Invest West's partial motion for summary judgment, the trial court granted the motion and dismissed Branchick's WLAD claims against them.

2. MELROSE STATION, INVEST WEST, AND PIERCE COUNTY'S MOTIONS FOR SUMMARY JUDGMENT

Melrose Station and Invest West subsequently moved for summary judgment on the remaining claims against them, and Pierce County moved for summary judgment on all claims against it as well. The County argued that it did not form a contract with the plaintiffs, there was no evidence that the County created a public nuisance, no statute creates tort liability predicated on the enforcement of parking regulations, and the WLAD did not apply. The County attached a declaration from Clint Ritter, a county engineer, to its motion for summary judgment.

In his response to the County's motion, Branchick attached, among other things, another declaration, photographs appearing to show county vehicles parked on the sidewalks, interrogatories, a timeline of events prepared by Ritter, a letter from the County to the federal government, and multiple emails between Branchick, the County, and Invest West.

The trial court heard oral argument on Melrose Station and Invest West's second motion for summary judgment and Pierce County's motion for summary judgment. The trial court granted Melrose Station and Invest West's motion for summary judgment dismissing all of Branchick's claims against them. The trial court also granted Pierce County's motion for summary judgment dismissing all of Branchick's claims against the County.

Branchick appeals the trial court's three orders dismissing each of his claims against Melrose Station, Invest West, and Pierce County on summary judgment. Branchick appeals the trial court's dismissal of all his claims except his negligent infliction of emotional distress claim.[5]

## DISCUSSION

We review a superior court's grant or denial of summary judgment de novo, performing the same inquiry as the trial court. *Davies v. Multicare Health Sys.*, 199 Wn.2d 608, 616, 510 P.3d 346 (2022). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing an order granting summary judgment, we view the facts in the light most favorable to the nonmoving party. *Davies*, 199 Wn.2d at 616. We consider only the evidence that was brought to the trial court's attention. *Id.*; RAP 9.12.

---

[5] Because Branchick did not assign error to, brief, or argue the negligent infliction of emotional distress issue, we do not consider it.

"[T]he moving party has the initial burden to show there is no genuine issue of material fact," and "meets this burden by showing that there is an absence of evidence to support the plaintiff's case." *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). "Once the moving party has made such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact." *Id.* We will find a genuine issue of material fact when the evidence would allow a reasonable jury to return a verdict in favor of the nonmoving party. *Id.* at 182-83. To rebut the moving party's contentions, the nonmoving party's response must be based on "personal knowledge, must set forth facts that would be admissible in evidence, and must show affirmatively that the declarant of such facts is competent to testify to the matters stated therein." *Lane v. Harborview Med. Ctr.*, 154 Wn. App. 279, 286, 227 P.3d 297 (2010). Conclusory statements, speculation, and argumentative assertions are insufficient to create a genuine issue of material fact. *Greenhalgh v. Dep't of Corrs.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011).

I. BRANCHICK'S WLAD CLAIMS

Branchick argues that Melrose Station and Invest West violated the WLAD's housing and real estate transaction provisions under RCW 49.60.222 when they allowed neighbors to obstruct the sidewalks, and when Melrose Station failed to enforce its Declaration and Rules Enforcement Procedure and failed to accommodate Branchick's need for accessible walkways. Branchick contends that these actions constituted unlawful discrimination under RCW 49.60.030, 49.60.040, and 49.60.222 on the basis that Melrose Station and Invest West engaged in a "real estate transaction" with Branchick and that the sidewalks and common areas of the homeowners' association constitute areas of public accommodation.

Branchick further argues that Melrose Station and Invest West aided and abetted unlawful practices in violation of RCW 49.60.220, and unlawfully intimidated the Branchicks while they were exercising their rights in violation of RCW 49.60.2235, assuming that that Melrose Station or Invest West committed an unfair practice or engaged in a real estate transaction as defined in RCW 49.60.222. Melrose Station and Invest West argue that that their conduct did not violate chapter 49.60 RCW. We agree with Melrose Station and Invest West.

Branchick argues that Pierce County violated the WLAD by failing to enforce its parking code and for parking on the sidewalks. Pierce County argues that it did not violate the WLAD by temporarily parking vehicles on the sidewalks and failing to enforce its parking code. We agree with Pierce County.

A. LEGAL PRINCIPLES

RCW 49.60.030(1)(b) and (c) prohibit disability discrimination in real estate transactions and places of public accommodation. RCW 49.60.030(1) also states that the right to be free from discrimination "shall include, but not be limited to" the aforementioned enumerated areas. RCW 49.60.222(1)(b) further elaborates on the prohibition against disability discrimination, stating it is an unfair practice to "discriminate against a person in the terms, conditions, or privileges of a real estate transaction or in the furnishing of facilities or services in connection therewith."

"Real estate transaction" is defined as "include[ing] the sale, appraisal, brokering, exchange, purchase, rental, or lease of real property, transacting or applying for a real estate loan, or the provision of brokerage services." RCW 49.60.040(22). RCW 49.60.222(1)(f) prohibits any person from discriminating "in the sale or rental, or to otherwise make unavailable or deny a dwelling, to any person; or to a person residing in or intending to reside in that dwelling after it is

12

No. 56999-0-II

sold, rented, or made available; or to any person associated with the person buying or renting."

Discrimination under RCW 49.60.222(2) includes in relevant part:

>        (a) A refusal to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied . . . by such person if such modifications may be necessary to afford such person full enjoyment of the dwelling, . . .
>
>        (b) To refuse to make reasonable accommodation in rules, policies, practices, or services when such accommodations may be necessary to afford. . . equal opportunity to use and enjoy a dwelling; . . .
>
>        (c) To fail to design and construct covered multifamily dwellings and premises in conformance with the federal fair housing amendments act of 1988 . . .

And RCW 49.60.040(2) defines "public accommodation" in relevant part as:

>        "Any place of public resort, accommodation, assemblage, or amusement" includes, but is not limited to, any place, licensed or unlicensed, kept for gain, hire, or reward, or where charges are made for admission, service, occupancy, or use of any property or facilities, . . . PROVIDED, That nothing contained in this definition shall be construed to include or apply to any institute, bona fide club, or place of accommodation, which is by its nature distinctly private, including fraternal organizations, though where public use is permitted that use shall be covered by this chapter; . . .

RCW 49.60.040(2).[6]

RCW 49.60.220 makes it an unfair practice "to aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the provisions of this chapter or any order issued thereunder." Additionally, RCW 49.60.2235 provides in full that:

>        It is an unlawful practice to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, rights regarding real estate

---

[6] Branchick did not allege in his complaint that Melrose Station or Invest West discriminated against Ruth in a place of public accommodation.

13

transactions secured by RCW 49.60.030, 49.60.040, and 49.60.222 through 49.60.224.

Statutory interpretation is a question of law reviewed de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id*. at 762. If a statute is unambiguous, the court need not consider outside sources. *Id.* The plain meaning is derived from the context of the statute in addition to any related statutes that provide legislative intent about the provision at issue. *Id.*

The provisions of the WLAD must be construed "liberally for the accomplishment of [its] purposes," which are to protect the "public welfare, health, and peace of the people." *Wash. State Hum. Rts. Comm'n v. House. Auth. of City of Seattle*, 21 Wn. App. 2d 978, 985-86, 509 P.3d 319 (2022). Under the WLAD, the "right to be free from discrimination because of . . . any sensory, mental, or physical disability . . . is . . . a civil right." RCW 49.60.030(1).

B. ANALYSIS

1. WLAD CLAIM AGAINST MELROSE STATION AND INVEST WEST

We affirm the trial court's dismissal of Branchick's WLAD claim against Melrose Station and Invest West because as a matter of law based on the specific facts alleged in this case, neither Melrose Station nor Invest West engaged in "real estate transactions" and the neighborhood sidewalks were not a place of "public accommodation."

A. REAL ESTATE TRANSACTIONS

In *Washington State Human Rights Commission*, the HRC appealed the trial court's CR 12(b)(6) dismissal of the plaintiff's WLAD claim, where the Seattle Housing Authority (SHA) argued that the issuance of Section 8 vouchers was not a real estate transaction subject to the WLAD. 21 Wn. App. 2d at 982. Division One reversed, holding that the SHA was subject to the

requirements of the WLAD. *Id.* at 986. The court reasoned that as an issuer of Section 8 vouchers, the SHA's denial of the plaintiff's request for a reasonable accommodation fit within the plain meaning of real estate transactions. *Id.* Division One concluded that issuing a Section 8 voucher was at the very least a "service[ ] in connection" with a real estate transaction under RCW 49.60.222(1)(b) because real estate transactions include rentals under RCW 49.60.040(22). *Id.* Consequently, the court further reasoned that the provision of a subsidy for a rental was a service that enables and connects to the transaction. *Id.* The court also noted that the issuance of a Section 8 voucher fell within RCW 49.60.222(2)(b) by affecting a person's "opportunity to use and enjoy a dwelling" by enabling access to the dwelling. *Id.* at 986-87.

Unlike in *Washington State Human Rights Commission*, which involved deciding whether the SHA's issuance of a section 8 voucher qualified as a real estate transaction and thus its activities fell within the scope of the WLAD, a homeowners' association does not provide services in connection with real estate transactions. *Id.* at 985-986.

The plain meaning of RCW 49.60.040(22) shows that the failure to enforce a covenant within the homeowners' association's Declaration is not a "sale, appraisal, brokering, exchange, purchase, rental, or lease of real property, transacting or applying for a real estate loan, or the provision of brokerage services." Any other interpretation would contradict its plain meaning. *Jametsky*, 179 Wn.2d at 762. Thus, we turn to RCW 49.60.222, which Branchick also claims Melrose Station and Invest West violated, to determine whether they engaged in acts constituting discrimination as set forth therein. But Melrose Station and Invest West's conduct does not fall within RCW 49.60.222(1)(b) because there is no evidence that they engaged in a "real estate transaction" or any allegations that they discriminated against Branchick in the "terms, conditions,

or privileges" in connection with any real estate transaction. Similarly, there is no evidence that Melrose Station or Invest West furnished facilities or services in connection with a real estate transaction, unlike in *Washington State Human Rights Commission.* RCW 49.60.222(1)(b); 21 Wn. App. 2d at 986.

Moreover, Branchick has not explained how Melrose Station and Invest West's conduct would fall within RCW 49.60.222(1)(f), which prohibits discrimination in the sale or rental of a dwelling. Indeed, an alleged failure to enforce covenants in the Declaration and Rules and Regulations to fine individuals who parked on the sidewalks clearly does not involve a rental or sale of a dwelling. Furthermore, Branchick does not explain how Melrose Station and Invest West could have violated RCW 49.60.222(2)(a), which involves a refusal to permit reasonable modifications of existing premises at the expense of a person with a disability. Melrose Station and Invest West did not own or control the sidewalks where the obstructions were, so neither of them could have refused to permit reasonable modifications of property that they had no authority to modify in the first place.

Branchick also claims that Melrose Station and Invest West violated RCW 49.60.222(2)(b) by failing to make an accommodation for Ruth's need for accessible walkways. Although unclear from Branchick's briefing, Branchick appears to claim that Melrose Station's failure to enforce the parking restrictions in the Declaration and Rules and Regulations by not fining neighbors who obstructed the sidewalks constituted a refusal to "make reasonable accommodation in rules, policies, practices, or services when such accommodations may be necessary to afford a person . . . equal opportunity to use and enjoy a dwelling" in violation of RCW 49.60.222(2)(b). However, Branchick's argument assumes that action by Melrose Station to fine his neighbors for

the sidewalk obstructions would alter the behavior of his neighbors. Branchick's argument further assumes that the enforcement of the covenants and provisions in a Declaration and Rules and Regulations would constitute a reasonable accommodation.

Lastly, Branchick fails to explain how Melrose Station and Invest West's conduct violated RCW 49.60.222(2)(c), which involves the failure to design and construct multifamily dwellings in conformance with the Federal Fair Housing Amendments Act of 1988.[7] The plain meaning of this section reveals that Melrose Station and Invest West could not have violated it because they did not design or construct any dwellings, let alone multifamily dwellings.

We hold that Melrose Station and Invest West did not engage in "real estate transactions" or commit an "unfair practice" in connection with "real estate transactions" and therefore did not violate RCW 49.60.030 or RCW 49.60.222. Therefore, we further hold that the trial court properly dismissed Branchick's WLAD claim against Melrose Station and Invest West.

### B. PUBLIC ACCOMMODATION

Branchick claims that the sidewalks in Melrose Station are places of public accommodation as defined in RCW 49.60.040(2). According to Branchick, the sidewalks are places of public accommodation because the homeowners' association annual fees constituted a place where "charges are made for 'occupancy' or 'use' of any property." Br. of Appellant at 21. However, homeowners' association assessments are imposed for the purpose of covering maintenance costs of common areas, not necessarily enforcement of the Declaration's covenants. Additionally, assessments were not, and could not be used to maintain the sidewalks because they were not common areas or owned or controlled by Melrose Station or Invest West. Branchick also fails to

---

[7] 42 U.S.C. §§ 3601-3619.

17

cite any authority that a private entity can be held liable under the WLAD for the acts of third parties on property that the entity does not own or control.

Branchick also argues that the sidewalks are places of public accommodation because Melrose Station is not a gated community and is accessible by the public. However, we do not read RCW 49.60.040(2) to mean that a homeowners' association's mere lack of a gate makes the sidewalks in the development places of public accommodation where the homeowners' association does not own or control the sidewalks. Because Melrose Station does not own or control the sidewalks it does not have the power to exclude members of the public from them. Therefore, we hold that the Melrose Station sidewalks do not constitute places of public accommodation and neither Melrose Station nor Invest West violated RCW 49.60.030.

Branchick additionally claims that Melrose Station's common areas are places of public accommodation because the development is not a gated community and they fit within the plain meaning of public accommodation. However, nothing within the text of RCW 49.60.040(2) suggests that because homeowners' associations require annual dues for the maintenance of common areas, that those common areas are by default places of public accommodation. RCW 49.60.040(2). Indeed, RCW 49.60.040(2) excludes places that are by their nature "distinctly private." Here, Melrose Station's common areas are private because they are used solely for the use of the homeowners' association and its members. There is no evidence in the record that Melrose Station's common areas were public. We hold that the Melrose Station common areas do not constitute places of public accommodation.

C. RETALIATION

Melrose Station and Invest West did not aid or abet any unfair practice under chapter 49.60 RCW because they did not commit an "unfair practice" or otherwise violate the WLAD. Because a violation of chapter 49.60 RCW is a prerequisite to finding a potential violation of RCW 49.60.222, Branchick's claim under RCW 49.60.220 fails as a matter of law.

Additionally, a violation of RCW 49.60.2235 depends on wrongful conduct such as intimidation, threats, or interference with a person's rights regarding real estate transactions. Here, Melrose Station and Invest West did not engage in a "real estate transaction" as defined by chapter 49.60 RCW and therefore as a matter of law did not violate RCW 49.60.2235.

2. DISMISSAL OF BRANCHICK'S WLAD CLAIM AGAINST PIERCE COUNTY

Branchick claims that Pierce County violated WLAD RCW 49.60.222(2)(b) in failing to enforce its parking codes. Yet, Branchick cites no authority that a failure to enforce a parking code constitutes a refusal to "make reasonable accommodation in rules, policies, practices, or services" as set forth in RCW 49.60.222. Additionally, RCW 49.60.222 is titled "Unfair practices with respect to real estate transactions, facilities, or services," and there are no facts in the record that Pierce County engaged in a "real estate transaction" as defined by RCW 49.60.040(22). Branchick also asserts that Pierce County promised Branchick that it would enforce its parking code without providing any specific factual support in the record. Br. of Appellant at 44. However, the record does not support Branchick's claim that Pierce County made any promise to Branchick to enforce its parking code. Therefore, we conclude that based on the record and facts alleged the County's alleged failure to enforce its parking codes did not violate RCW 49.60.222.

Branchick further claims that Pierce County violated the WLAD by parking vehicles on the Melrose Station sidewalks. The record does not divulge specific facts showing the length or frequency that Pierce County parked its vehicles on the sidewalks, beyond Branchick's assertions and several photographs showing vehicles parked on the sidewalks. Additionally, Branchick does not explain, or cite to, which section, or sections, of chapter 49.60 RCW Pierce County violated in parking its vehicles on the sidewalks.[8] We hold that the trial court properly dismissed Branchick's WLAD claim against the County because the County did not violate the WLAD by failing to enforce its parking codes and by parking vehicles on the sidewalks.

## II. CONSUMER PROTECTION ACT CLAIM

Branchick argues that his CPA claim should be reinstated because Melrose Station and Invest West violated the WLAD. Melrose Station and Invest West argue that the trial court correctly dismissed Branchick's CPA claim where there was no violation of the WLAD.

"A party asserting a CPA claim must establish five elements: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) that affects the public interest (4) injury to the party's business or property and (5) causation." *Kosovan v. Omni Ins. Co.*, 19 Wn. App. 2d 668, 680, 496 P.3d 347 (2021).

RCW 49.60.030(3) provides in relevant part that:

[A]ny unfair practice prohibited by this chapter which is committed in the course of trade or commerce as defined in the [CPA], chapter 19.86 RCW, is, for the

---

[8] Branchick appears to claim in passing that Pierce County violated RCW 49.60.215 by discriminating against Branchick in a place of public accommodation. Branchick does not explain what he thinks the place of public accommodation is. However, to the extent that Branchcik claims that a sidewalk is a place of public accommodation as he claimed in his WLAD claim against Melrose Station and Invest West, he cites no authority that a sidewalk is place of public accommodation as defined in RCW 49.60.040(2).

purpose of applying that chapter, . . . an unfair or deceptive act in trade or commerce.

Because Melrose Station and Invest West did not commit a WLAD violation, and Branchick's CPA claim rests entirely on the assertion that they did, there was no CPA violation as a matter of law and the trial court properly dismissed Branchick's claim.

### III. BREACH OF CONTRACT

Branchick argues that the trial court erred in dismissing his breach of contract claims against Melrose Station and Invest West because Melrose Station and Invest West did not enforce parking restrictions contained in the Declaration and Rules and Regulations. Branchick claims that the adoption of the Rules Enforcement Procedure represented a promise to Ruth and Kyle that Melrose Station would enforce parking restrictions because the Rules Enforcement Procedure did not leave any discretion regarding enforcement. Branchick also claims that they paid association dues to ensure enforcement.

Melrose Station and Invest West argue they did not breach any contractual obligation to Branchick because the Declaration stated that Melrose Station had discretion to enforce, or not enforce, its parking restrictions, and therefore Melrose Station had no legal duty to enforce the Declaration's provisions. Additionally, Melrose Station and Invest West further argue the Rules Enforcement Procedure document did not create an enforceable contract between Branchick and Melrose Station.

Branchick also argues that the trial court erred in dismissing the breach of contract claims against Pierce County because Pierce County promised to enforce its parking regulations at Melrose Station but it did not do so. More specifically, at summary judgment Branchick claimed that the County's October 16, 2020 letter to the to the FHWA promised Kyle that Pierce County

would enforce its codes prohibiting blocked sidewalks and pathways thereby establishing an enforceable contract between Branchick and Pierce County. Pierce County argues that there was no contract formed between the County and Branchick. We agree with Melrose Station, Invest West, and Pierce County.

A. LEGAL PRINCIPLES

"Interpretation of covenants is a question of law based on the rules of contract interpretation." *Bangerter v. Hat Island Cmty. Ass'n*, 199 Wn.2d 183, 189, 504 P.3d 813 (2022). For a contract to form, the parties must objectively manifest their mutual assent. *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wn.2d 171, 177, 94 P.3d 945 (2004). In general, mutual assent requires an offer and an acceptance. *Id.* A valid contract also requires consideration. *Id.* A party must show that a contract imposes a duty, that the defendant breached that duty, and that the breach proximately caused the party's harm to raise a successful claim for breach of contract. *C 1031 Props., Inc. v. First Am. Title Ins. Co.*, 175 Wn. App. 27, 33, 301 P.3d 500 (2013).

When a homeowners' association makes a discretionary decision in a procedurally valid manner, we must not substitute our judgment for that of the homeowners' association unless there is fraud, dishonesty, or incompetence. *Bangerter*, 199 Wn.2d at 190. The supreme court noted that this rule was necessary to insulate homeowner associations from being subjected to lawsuits anytime a homeowner disagreed with a discretionary choice made by the Board. *Id.* at 190-91.

B. ANALYSIS

1. DISMISSAL OF CONTRACT CLAIM AGAINST MELROSE STATION AND INVEST WEST

Branchick's contract claim arising out of an alleged breach of the Declaration does not hold merit. The Declaration provided Melrose Station with discretion to enforce the parking restrictions

and as a result Melrose Station had no legal duty to take enforcement action regarding alleged violations of the parking restriction provisions. The relevant sections of the Declaration state:

> No vehicle may be parked on any building Lot or sidewalks, except on designated and approved driveways or parking areas which shall be hard-surfaced.

CP at 41 (Declaration Article 9, § 28). Moreover,

> The Association, or the Declarant during the Development Period, may, but is not required to, take any action to enforce the provisions of the Declaration available to it under law, including but not limited to imposition of fines as authorized by RCW Chapter 64.38, specific performance, injunctive relief, and damages. Any Member may also enforce the terms of this Article . . . but the Member must first obtain an order from a court of competent jurisdiction entitling the Member to relief. In the event that a Member takes any action to enforce the terms of this Article, the Association shall not be in any way obligated to join in such action, or pay any of the attorney's fees, costs and expenses incurred in such action.

*Id.* at 46 (Declaration, Art. 9, § 48).

The relevant provisions of the Declaration read together clearly demonstrate that Melrose Station did not make any promise to Branchick to enforce its parking restrictions. While Melrose Station had the power to enforce the parking restrictions, the Declaration did not require it to. Because Melrose Station did not make a promise to any of the lot owners to enforce its parking restrictions in the Declaration, Branchick's contract claim based on Melrose Station's failure to enforce those parking restrictions fail for lack of a contractual duty.

Branchick also claims that Melrose Station violated the Rules and Regulations by failing to enforce its provisions. Even if this were so, Branchick fails to explain how an alleged violation of either the Rules Enforcement Procedure or the Rules and Regulations equates to a contract breach or even how the Rules Enforcement Procedure formed a contract between Ruth Branchick and Melrose Station. The Rules and Regulations did not require Melrose Station to enforce any

specific rule. The Rules and Regulations merely provided a procedure for Melrose Station to follow if it exercised its discretion to enforce the parking restrictions.

Because Branchick fails to allege a cause of action supporting a breach of contract claim against Melrose Station or Invest West, we hold that the trial court properly granted summary judgment in favor of Melrose Station and Invest West dismissing Branchick's breach of contract claims.

2. DISMISSAL OF CONTRACT CLAIM AGAINST PIERCE COUNTY

Branchick failed to raise factual allegations in his complaint, declarations, or at summary judgment that showed the formation of a contract between Branchick and Pierce County. Branchick points to the County's response to the FHWA's Letter of Finding as evidence of a written promise to Branchick that the County would enforce its codes prohibiting parking on sidewalks. Branchick assumes and asserts that the County's letter to FHWA contains a promise to enforce parking regulations. However, nothing in the letter shows that any promise regarding parking enforcement on the sidewalks was made to Branchick, nor does Branchick explain how the letter's language is a promise to him or an enforceable contract. The letter was sent by the County to the FHWA, not from the County to Branchick. The enforcement of any alleged promise made by Pierce County to the FHWA in the October 2020 letter would need to be made by the FHWA.

We affirm the trial court's dismissal of Branchick's breach of contract claim against Pierce County because Branchick failed to show a genuine issue of material fact regarding the existence, or formation of, a contract between Branchick and Pierce County. None of the evidence before the

trial court on summary judgment contained specific facts suggesting that a contract formed between Pierce County and Branchick.

## IV. BAD FAITH AND UNFAIR DEALING CLAIM

Branchick argues that the trial court erred in dismissing his bad faith and unfair dealing claim because Melrose Station and Invest West acted in bad faith by failing to enforce its Declaration and Rules and Regulations when Branchick asked them to do so. Melrose Station and Invest West argue that they acted within their rights under the Declaration and there was no breach of contract, and therefore as a matter of law there could be no breach of the implied duty of good faith and fair dealing. We agree with Melrose Station and Invest West.

### A. LEGAL PRINCIPLES

An implied duty of good faith and fair dealing exists in every contract. *Keystone*, 152 Wn.2d at 177. This duty requires that both parties to a contract perform the agreement's obligations in good faith so that each party may obtain the full benefit of performance. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569, 807 P.2d 356 (1991). The duty of good faith and fair dealing does not impose a "free floating" obligation that is unattached to an existing contract. *Keystone*, 152 Wn.2d at 177. Instead, the duty arises only in connection with agreed upon terms. *Badgett*, 116 Wn.2d at 569. "If there is no contractual duty, there is nothing that must be performed in good faith." *Johnson v. Yousoofian*, 84 Wn. App. 755, 762, 930 P.2d 921 (1996). The duty of good faith is not breached when it merely requires performance of a contract according to its terms. *Badgett*, 116 Wn.2d at 570.

B. ANALYSIS

Branchick's bad faith and unfair dealing claim hinges entirely on the existence of a contractual duty. However, there is no genuine issue of material fact that showed the formation of an enforceable contractual duty between Branchick and Melrose Station and Invest West.

Because there is no "free floating obligation" on the parties to act in good faith where there was no underlying contract, the trial court also properly dismissed Branchick's bad faith and unfair dealing claim. Additionally, Branchick cites no authority for the proposition that an alleged refusal to enforce a covenant contained in the Declaration or Rules and Regulations may constitute bad faith or that the implied covenant of good faith and fair dealing even applies in the real property sphere of Declaration provisions and enforcement. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

We hold that the trial court properly dismissed Branchick's bad faith and unfair dealing claim because there was no genuine issue of material fact that showed the formation of an enforceable contractual duty between Branchick and Melrose Station and Invest West.

VI. NEGLIGENCE CLAIM AGAINST MELROSE STATION AND INVEST WEST

Branchick argues that the trial court erred in granting summary judgment on Branchick's negligence claim against Melrose Station and Invest West because Melrose Station had an independent duty of care to maintain the development in a nonnegligent manner. Melrose Station and Invest West argue that there is no basis for a negligence claim because their duties arose solely

from the Declaration and the homeowners' association statute, and there was no independent duty in tort.

We agree with Melrose Station and Invest West.

A. LEGAL PRINCIPLES

To prevail on a negligence claim, a plaintiff, " 'must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) breach as the proximate cause of the injury.' " *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020) (internal quotation marks omitted) (quoting *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 429, 378 P.3d 162 (2016)). Where we are asked to determine whether a plaintiff is limited to contract remedies or whether they may recover in tort, we apply the independent duty doctrine. *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wn.2d 442, 449, 243 P.3d 521 (2010) (plurality opinion). Under the independent duty doctrine, only if the injury traces back to the breach of a tort duty arising independently from the terms of the contract may an injury be remediable in tort. *Id.* We decide whether the defendant was under an independent tort duty as a matter of law using ordinary tort principles. *Id.* The independent duty doctrine is an instrument used by the court " 'to maintain the boundary between torts and contract.' " *Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 165, 273 P.3d 965 (2012) (quoting *Eastwood v. Horse Harbor Found., Inc.*, 170 Wn.2d 380, 416, 241 P.3d 1256 (2010) (Chambers, J., concurring)).

B. ANALYSIS

Here, there is no applicable tort duty independent of the duties existing outside of the Declaration and chapter 64.38 RCW. Beyond the Declaration, Rules and Regulations, Rules Enforcement Procedure, and the duties proscribed by chapter 64.38 RCW, Melrose Station and

Invest West did not owe any duty to Branchick. This is because the Declaration and homeowner association statute control the scope of the relationship between Branchick and Melrose Station. Without the Declaration there would not be a homeowners' association or property manager and there would not be a relationship between Branchick and Invest West and Melrose Station.

Branchick claims that premise liability principles obligate property managers and the property owner to maintain common areas in a safe condition from the unlawful behavior of third parties and to make sidewalks safe. However, the cases Branchick cites are distinguishable.

In *Faulkner v. Racquetwood Village Condominium Ass'n*, 106 Wn. App. 483, 485, 23 P.3d 1135 (2001), the plaintiff, who was raped by an assailant who hid in an unlit common area of her condominium complex, brought an action for negligence against the condominium association. Division One held that the trial court properly dismissed Faulkner's complaint against Faulkner's landlord and property manager for the unit because neither of them had the right or duty to control the common area of the condominium complex where the attack occurred. *Id.* at 487. The court recognized that the condominium association and the property manager for the common areas were the parties with control over the common areas. *Id.* Here, unlike in *Faulkner*, Branchick has not presented any facts showing that Melrose Station or Invest West owned or controlled the sidewalks, where the alleged negligence occurred. Additionally, it is undisputed that the sidewalks were not common areas.

Branchick states that landlords have an affirmative duty to maintain the premises and may not passively refrain from negligent conduct, citing *Geise v. Lee*, 84 Wn.2d 866, 529 P.2d 1054 (1975). In *Geise*, the plaintiff, a tenant of a mobile home park, slipped and fell on a patch of snow and ice in a common area and sued the mobile home park for negligence. 84 Wn.2d at 867. The

court reaffirmed that a landlord owed a duty of reasonable care to keep common areas reasonably safe from hazards likely to cause injury and held that a question of fact existed as to whether the mobile home park exercised reasonable care in light of them knowing about the snow and ice. *Id.* at 871-72. However, here, Melrose Station and Invest West were not Branchick's landlord and also did not control the sidewalks where the items obstructing Ruth's movements were allegedly located.

Branchick also claims that RCW 64.38.020 allows a homeowners' association to control the behaviors of homeowners. RCW 64.38.020 is a section of the homeowners' association statute that describes fourteen default powers of the association unless otherwise set forth in the "governing documents." The statute defines governing documents as, among other things, the articles of incorporation, bylaws, plat, Declaration, and Rules and Regulations of the association. RCW 64.38.010. First, RCW 64.38.020 provides default powers of a homeowners' association and are superseded by the association's governing documents, which here are the Declaration and Rules and Regulations. Second, the statute provides a list of powers that the association "may" exercise. RCW 64.38.020. Although the default statute allows the association to levy fines on property owners who violate the Rules and Regulations, the statute does not require that the association do so or impose a duty on the association. RCW 64.38.020 (11).

Finally, Branchick contends that a business owner may not negligently undertake its duties to make the premises safe, citing *Sorenson v. Keith Uddenberg, Inc.*, 65 Wn. App. 474, 828 P.2d 650 (1992). However, *Sorenson* is inapposite. In *Sorenson,* the court held that there were genuine issues of material fact about whether the store owner breached a duty of care to a patron where the patron slipped and fell on ice that was created by the store owner's plowing. 65 Wn. App. at 479-

480. Here, neither the homeowners' association nor the property manager owned the sidewalks or placed the cars, basketball hoops, and garbage cans on the sidewalks.

We hold that the trial court properly dismissed Branchick's negligence claim on summary judgment because, as a matter of law, Melrose Station and Invest West did not owe a duty of care arising in tort to keep the sidewalks clear or to enforce the Declaration and Rules and Regulations.

VI. NEGLIGENCE CLAIM AGAINST THE COUNTY

Branchick argues that the trial court erred in granting summary judgment to the County on Branchick's negligence claim based on two exceptions to the public duty doctrine. First, Branchick argues that the County had a special relationship to the Branchicks. And second, the Branchicks claim that the "failure to enforce" exception applies. Br. of Appellant at 36.

The County argues that it did not owe a duty to Branchick and neither the special relationship exception, nor the failure to enforce exception to the public duty doctrine apply. We agree with the County.

A. LEGAL PRINCIPLES

In the 1960s the Washington Legislature exercised its authority to allow tort claims against state and local governments in Washington. *Norg v. City of Seattle*, 200 Wn.2d 749, 756, 522 P.3d 580 (2023). As a result, the government is liable for " 'damages arising out of their tortious conduct, . . . to the same extent as if they were a private person or corporation.' " *Norg*, 200 Wn.2d at 756 (quoting RCW 4.96.010(1)). To be held liable, a governmental entity must engage in tortious conduct that is in the same vein as the misconduct and liability of a private person or entity. *Id.* However, governments have certain special duties that private persons do not. These special duties are imposed by statute or ordinance and demonstrate that the government owes the

30

public general obligations. *Norg*, 200 Wn.2d at 757. Those general governmental obligations are not actionable in tort because a negligence cause of action does not arise unless the plaintiff owes the plaintiff a duty of care. *Id.* at 757.

Consequently, a government entity's breach of a duty owed to the general public is insufficient to sustain a tort claim for negligence as a matter of law. *Id.* The plaintiff must show " 'that the duty breached was owed to an individual and was not merely a general obligation owed to the public' " to establish a duty in tort against a governmental entity. *Id.* (quoting *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 549, 442 P.3d 608 (2019))

The public duty doctrine creates government liability only to the same effect as if the government was a private person or entity. *Id.* at 758. "If the duty that the government allegedly breached was owed to the public at large, then the public duty doctrine applies; if the duty was owed to an individual, then the public duty doctrine does not apply." *Id.* Additionally, if the public duty doctrine applies, the negligence claim must be dismissed for lack of duty unless there is an exception. *Id.* There are four exceptions to the public duty doctrine: "(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship." *Id.*

A special relationship between a municipality's agents and a plaintiff will exist and give rise to an actionable duty if there is "(1) direct contact or privity between the public official and the plaintiff that sets the plaintiff apart from the general public, (2) an express assurance given by the public official, and (3) justifiable reliance on the assurance by the plaintiff." *Munich v. Skagit Emergency Commc'ns Ctr.*, 175 Wn.2d 871, 879, 288 P.3d 328 (2012). The express assurance must be in response to a specific inquiry. *See Babcock v. Mason County Fire Dist. No. 6*, 144

Wn.2d 774, 790-91, 30 P.3d 1261 (2001) (plurality opinion). The plaintiff must seek an express assurance and the government must clearly provide that assurance. *Id.* at 789.

The failure to enforce exception to the public duty doctrine acknowledges that some statutes impose a duty on government owed to a particular category of individuals, whereby the failure to enforce those statutes breaches a duty arising in tort. *Ehrhart*, 195 Wn.2d at 402. To prove the failure to enforce exception applies, a plaintiff must show that:

> [1)] governmental agents responsible for enforcing statutory requirements possess actual knowledge of a statutory violation, [(2)] fail to take corrective action despite a statutory duty to do so, and [(3)] the plaintiff is within the class the statute intended to protect.

*Id.* (alteration in original).

The plaintiff has the burden to establish each element of the failure to enforce exception, and we construe the exception narrowly. *Gorman v. Pierce County*, 176 Wn. App. 63, 77, 307 P.3d 795 (2013). An ordinance creates a statutory duty to take corrective action if it requires a specific action when the ordinance is violated. *Id.* However, if the government has broad discretion regarding whether and how to act then the failure to enforce exception does not apply. *Pierce v. Yakima County*, 161 Wn. App. 791, 799, 251 P.3d 270 (2011).

B. ANALYSIS

    1. SPECIAL RELATIONSHIP

Branchick claims that Pierce County made an express assurance by promising the federal government and Branchick that it would take parking enforcement action at Melrose Station to clear the rights-of-way. Branchick points to the County's October 16, 2020 letter to the FHWA. However, the letter does not make any express assurance to, or mention, Kyle Branchick. The letter was sent and addressed to the federal government, not to Branchick. Although Branchick

argues that the letter promised the federal government and Branchick that it would take parking

enforcement action to clear the sidewalks, the portion of the letter that Branchick references states

that there would be "an emphasis on working with constituents on the removal of sidewalk . . .

obstructions . . . [s]taff has been instructed to be more proactive on the removal of such obstructions

and we are committed to taking quick action to resolve these issues when identified in the future."

CP at 405. The letter further provides that staff were instructed to work with the Community Liason

Sherriff Deputy to more proactively ticket vehicles obstructing the sidewalks. Branchick does not

explain how these statements are promises to him and the record is devoid of evidence that such

an alleged promise was ever made by Pierce County to the federal government or to Branchick.

Branchick also asserted that he received:

express assurances from my contacts at Pierce County that Pierce County would take enforcement action at Melrose Station to keep the sidewalks clear. Mr. Ritter told me that Pierce County contacted the Homeowner's Association to assist with enforcement and that code enforcement was notified to respond and enforce the code at Melrose Station.

*Id.* at 373.

Even though we take the statement of the nonmoving party in a summary judgment motion

as true, Branchick's statement does not demonstrate that he received an express assurance.

*Babcock*, 144 Wn.2d at 788-791; *see also Cummins v. Lewis County*, 156 Wn.2d 844, 855-56, 133

P.3d 458 (2006) (holding that there was no express assurance where 911 operator did not

unequivocally give individual an express promise that medical assistance would be dispatched). A

government duty may not arise from implied assurances. *Babcock*, 144 Wn.2d at 789.

Here, Ritter is the only Pierce County official that Branchick specifically identifies that

allegedly told him that enforcement action would be taken. Branchick's allegation that Ritter "told

me that Pierce County contacted the Homeowner's Association to assist with enforcement" does not rise to the level of an express assurance because Pierce County has no control over whether Melrose Station would decide to assist with parking enforcement. CP at 373. Moreover, Ritter's statement that "code enforcement was notified to respond and enforce the code at Melrose Station" did not provide a guarantee or express assurance that code enforcement would in fact respond and enforce the code at Melrose Station, Ritter merely allegedly told Branchick that he *notified* code enforcement. *Id.*

In *Babcock*, homeowners brought a negligence action against the fire district and its commissioners for damages arising out of fire in their mobile home. 144 Wn.2d at 777-782. The homeowner claimed that a fire fighter gave him express assurances when she told him the fire fighters would take care of protecting his property. *Id.* at 788-89. As a result, the homeowners claimed that this assurance caused them to discontinue their own efforts to save their property. *Id.* at 789. The lead opinion held that the fire fighter did not give express assurances to the homeowners, reasoning that the statement made by the fire fighter did not indicate that she or any of the other fire fighters would act in a specific manner. *Id.* at 791. Here, like in *Babcock*, Ritter's alleged statements to Branchick did not indicate that he, or Pierce County, would act in a specific manner. We conclude that Branchick failed to allege a special relationship between himself and Pierce County based on these statements.

Branchick nevertheless points to one of his interrogatory answers as evidence that Branchick received express assurances from Pierce County that it would take enforcement action to keep the sidewalks clear. This interrogatory includes a list of the County employees that Branchick allegedly interacted with and Branchick claims that the officials indicated that they

would investigate his concerns. However, assuming Branchick's allegation that the officials told him they would investigate is true, a claim that County officials would investigate is not the same as promising enforcement action pertaining to County and State parking ordinances and laws. Branchick also cites to a timeline prepared by Ritter, in January 2019 summarizing the County's contacts with Branchick from December 2017 to December 2018. The timeline does not state, or suggest, that the County ever promised to Branchick that it would enforce County and State parking ordinances.

Lastly, Branchick's citation to *Munich* is unpersuasive because *Munich* involved a 911 call where the plaintiff alleged multiple specific express assurances that a 911 dispatcher provided to a man being shot at and hunted by his neighbor with a gun. 175 Wn.2d at 874-76. Here, the record does not contain evidence that the County made any express assurances regarding the removal of sidewalk obstacles or code enforcement. Viewing the evidence and reasonable inferences in the light most favorable to Branchick, we hold that the special relationship exception does not apply to Pierce County.

2. FAILURE TO ENFORCE

The failure to enforce exception to the public duty doctrine does not apply. PCC 10.24.010, titled "Stopping, Standing or Parking Prohibited in Specified Places" lists several places where it is prohibited to stop, stand, or park a vehicle, including sidewalks, street planting strips, in intersections, or on crosswalks. PCC 10.24.010. The relevant language in the state statute is identical. *Compare* PCC 10.24.010, *with* RCW 46.61.570.

Here, neither PCC 10.24.010, nor RCW 46.61.570 require Pierce County or any other government entity to take corrective action when a person parks a vehicle on a sidewalk in

violation of the ordinance and statute. Similarly, PCC 10.24.010 and RCW 46.61.570 do not impose an enforcement duty on Pierce County to *act* if a person violates the ordinance and statute by parking a vehicle on the sidewalk. PCC 10.24.010, RCW 46.61.570. PCC 10.24.010 and RCW 46.61.570 merely set forth prohibited parking behaviors with no enforcement mechanism. Accordingly, here the County did not have a statutory obligation under either PCC 10.24.010 or RCW 46.61.570 to take corrective action regarding the vehicles that were parked on the sidewalks in Melrose Station under the second prong of the failure to enforce exception to the public duty doctrine. *Pierce*, 161 Wn. App. at 799-801.

Therefore, we hold that neither the special relationship nor the failure to enforce exception to the public duty doctrine applied to the County and consequently as a matter of law the trial court properly dismissed Branchick's negligence claim against the County on summary judgment because the County did not owe a duty to Branchick.

## VI. NUISANCE CLAIMS

Branchick argues that Melrose Station's failure to enforce the parking restrictions prohibiting parking on sidewalks in the Declaration and Rules Enforcement Procedure created an "obstruction" as mentioned in RCW 7.48.010 and that Melrose Station and Invest West should have abated the nuisance through "enforcement activities." Br. of Appellant at 30-32. Melrose Station and Invest West argue that there is no basis for a nuisance claim because they did not create or maintain a nuisance since the alleged obstructions were created by neighbors and the streets and sidewalks were owned by the County. We agree with Melrose Station and Invest West.

Branchick argues that the trial court erred in dismissing its nuisance claim against the County because the County failed to enforce its parking codes after promising Branchick that it

would do so and the County obstructed the sidewalks by parking vehicles on them. The County argues that it did not create a nuisance by temporarily parking on the sidewalks while performing maintenance and reconstructing the ramps. The County also argues that it is not liable under a nuisance theory for failing to enforce its parking codes. We agree with the County.

A. LEGAL PRINCIPLES

A nuisance is a substantial and unreasonable interference with the use and enjoyment of the property of another. *Kitsap County v. Kitsap Rifle & Revolver Club*, 184 Wn. App. 252, 276, 337 P.3d 328 (2014). We determine the reasonableness of a defendant's conduct by weighing the harm against the social utility of the activity. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 923, 296 P.3d 860 (2013). Under RCW 7.48.010 a nuisance is defined as an obstruction that interferes with another's enjoyment of life and property. RCW 7.48.120 further defines nuisance as an act or omission that obstructs a public street.

The plaintiff has the burden to show that the defendant's action results in a nuisance as provided in chapter 7.48 RCW. *Cheney v. City of Mountlake Terrace*, 87 Wn.2d 338, 347, 552 P.2d 184 (1976). A public nuisance affects the rights of the entire community equally and a private nuisance is any other nuisance. RCW 7.48.130, .150. A negligence claim brought as a nuisance claim is not considered apart from the negligence claim. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 527-28, 536, 799 P.2d 250 (1990) (affirming summary judgment on nuisance claim, "where the alleged nuisance is the result of the defendant's alleged negligent conduct, rules of negligence are applied.").

B. ANALYSIS

    1. DISMISSAL OF NUISANCE CLAIM AGAINST MELROSE STATION AND INVEST WEST

Here, the alleged nuisance is premised on the same omission, the failure to enforce the Declaration and Rules and Regulations, that forms the basis for Branchick's alleged negligence claim. Courts do not consider such negligence claims brought forth as nuisances. *Atherton*, 115 Wn.2d at 527-28. As a result, we hold that the trial court properly granted summary judgment on Branchick's nuisance claim.

Additionally, under RCW 7.48.120, a failure to act is only a nuisance if the inaction arose out of a failure to perform a duty. Here, Branchick does not cite any authority that a homeowner association's lack of enforcement of its Declaration and Rules and Regulations relating to parking restrictions creates an actionable nuisance claim as a matter of law. We need not consider arguments made without citation to authority. *DeHeer*, 60 Wn.2d at 126.

Moreover, Melrose Station and Invest West's alleged failure to enforce the Declaration, the Rules Enforcement Procedure, and the Rules and Regulations did not create the alleged sidewalk obstructions that Branchick complains about. Instead the alleged sidewalk obstructions that constituted the alleged nuisance, such as vehicles, basketball hoops, garbage cans, and other debris, were created by property owners in Melrose Station and other unidentified members of the public. Perhaps more importantly, no section of the nuisance statute pertains to obstructions on sidewalks. *See* ch. 7.48 RCW.

Branchick's reliance on *State v. Grant ex rel. Vandervort*, 156 Wash. 96, 286 P. 63 (1930) is not well taken. In *Grant*, a Seattle taxpayer challenged the existence of market stalls located on the public sidewalk at Pike Place Market. 156 Wash. at 97-98. The court reversed and dismissed

his public nuisance claim because he was not an abutting property owner and consequently his injury from the sidewalk obstruction did not differ in kind from the general public. *Id.*

Branchick's reliance on *West v. Keith*, 154 Wash. 682, 283 P. 198 (1929), is also misplaced. In *West*, the court affirmed the trial court's decree where the plaintiff, as an abutting property owner, brought a public nuisance claim against a neighbor who built structures on a public street thereby obstructing it. 154 Wash. at 683-85, 692-93. Neither of these cases are applicable to this case because those cases involved suits against the individual or entity that created the obstruction on the sidewalk or street, and were not based on a party's failure to act on an alleged duty to ameliorate an obstruction created by a third party.

We affirm the dismissal of Branchick's nuisance claim against Melrose Station and Invest West because there is no genuine issue of material fact and his nuisance claim fails as a matter of law.

2. DISMISSAL OF NUISANCE CLAIM AGAINST PIERCE COUNTY

Branchick's nuisance claim against the County based on an alleged promise to enforce its parking code fails. Branchick does not explain or provide citation regarding how a County's alleged promise to enforce a parking code may form the basis for nuisance liability. More importantly, even if a promise, and the subsequent failure to adhere to that promise could form the basis of nuisance liability, as we concluded earlier, the record does not show that the County ever promised Branchick that it would enforce its parking code.

Branchick's second basis for nuisance liability against the County is that the County created a nuisance by parking its vehicles on the sidewalks, thereby blocking them for no apparent reason. This claim also fails.

Branchick claimed that the duration of county parked vehicles was not inconsequential, was done for hours, and was done by the County with "no apparent reason." CP at 374. Even assuming the truth of Branchick's statements, they do not state facts that rise to the level of a substantial and unreasonable interference with the use and enjoyment of another's property. First, Branchick has cited no authority that the way a county parks its vehicles in a neighborhood may constitute a substantial interference and unreasonable interference with the use and enjoyment of another's property.

Second, the record does not show that Pierce County vehicles were in the neighborhood for "no apparent purpose." Finally, no reasonable juror could find the alleged harm to Branchick outweighed the utility of the presence of Pierce County's maintenance vehicles to perform maintenance and construction work. While reasonableness is typically a question of fact, a court may resolve such questions as a matter of law where reasonable minds could come to only one conclusion. *Lakey*, 176 Wn.2d at 924.

We affirm the dismissal of Branchick's nuisance claim against the County because the County's alleged conduct did not rise to the level of a substantial and unreasonable interference with the use and enjoyment of another's property.

ATTORNEY FEES

Branchick requests attorney fees and costs he occurred in defending the WLAD summary judgment motions that he argues were incorrectly decided. RCW 49.60.030(2) allows a person injured by a violation of the WLAD to recover actual damages and "the cost of suit including reasonable attorneys' fees or any other appropriate remedy . . ." Branchick also requests attorney fees, cost, and a penalty for his CPA claim under RCW 19.86.090. RCW 19.86.090 allows a person

to bring a civil action to enjoin further violations, recover actual damages, and to recover attorney fees and costs.

We deny Branchick's request for attorney fees under RCW 49.60.030(2) and RCW 19.86.090 because the trial court properly dismissed Branchick's WLAD and CPA claims on summary judgment.

Melrose Station and Invest West request attorney fees pursuant to RAP 18.1 and Art. 17, § 7 of the Declaration. RAP 18.1(a), (b) provides a party the "right to recover reasonable attorney fees or expenses on review" provided that the party requests the fees in its opening brief and "applicable law" grants the right to recover. We award attorney fees to the prevailing party " 'only on the basis of a private agreement, a statute, or a recognized ground of equity.' " *Tedford v. Guy*, 13 Wn. App. 2d 1, 17, 462 P.3d 869 (2020) (quoting *Equitable Life Leasing Corp. v. Cedarbrook, Inc.*, 52 Wn. App. 497, 506, 761 P.2d 77 (1988)). Art. 17 § 7 of the Declaration states that:

> In the event of legal action, the prevailing party shall be entitled to recover actual costs and attorney fees. . . . "legal action" shall include arbitration, law suit, trial, appeals, and any action, negotiations, demands, counseling or otherwise where the prevailing party has hired an attorney. It is the intent of this provision to reimburse the prevailing party for all reasonable attorney fees and actual costs incurred in defending or enforcing the provisions of this Declaration, or the owner's rights hereunder.

CP at 52. Here, Melrose Station and Invest West are the prevailing parties on appeal. However, they are entitled to attorney fees and costs *solely* on the breach of contract claim. Branchick's WLAD, CPA, bad faith, negligence, and nuisance, claims were not brought to defend or enforce the provisions of the Declaration. As a result, the Declaration's provision on attorney fees and costs only applies to Branchick's breach of contract claim which centered on Melrose Station's

alleged failure to enforce certain provisions in the Declaration. Accordingly, we award attorney fees and costs to Melrose Station and Invest West on the breach of contract claim.

## CONCLUSION

We affirm the trial court's dismissal of Branchick's claims on summary judgment. We further award attorney fees and costs to Melrose Station and Invest West on the breach of contract claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

MAXA, J.

PRICE, J.